## Western Show Co., Inc., Appellant, *v.* Mix.

Argued May 24, 1932. Before FRAZER, C. J., SIMPSON, KEPHART, SCHAFFER, MAXEY, DREW and LINN, JJ.

*Charles H. English,* of *English, Quinn, Leemhuis &
Tayntor,* for appellant.—The law will not allow any
class to be established who are exempt from pecuniary
responsibility in damages for failing to live up to their
obligations, and when one of a class called "specialists"
fails to live up to his obligations whereby another sus-
tains damages, the rule should be that the jury can
determine the amount of damages when the best evi-
dence obtainable has been produced for their considera-
tion: Weinglass v. Gibson, 304 Pa. 203; Osterlin v.
Frick, 284 Pa. 397; Eastman Kodak Co. v. Photo Co.,
273 U. S. 359; Rightmire v. Hirner, 188 Pa. 325.

The evidence as to the value of the defendant's serv-
ices was properly admitted, and it was error for the
court below to make the order granting a new trial when
the sole reason given for granting the new trial was the
admission of such evidence: McCullough v. Furnace
Co., 293 Pa. 45; First Nat. Bank of Birmingham v.
Fidelity T. & T. Co., 251 Pa. 536; Danboro v. Bucks
County, 258 Pa. 395; Baldus v. Jeremias, 296 Pa. 313;
Broomall v. R. R., 296 Pa. 137; Gervis v. Kay, 294 Pa.
518; Schroeder v. Refining Co., 300 Pa. 410.

*W. Pitt Gifford,* of *Gunnison, Fish, Gifford & Chapin,*
with him *John M. Kelley,* for appellee.—The alleged
contract was for the performance of personal services
of a unique and distinctive character, in a new and un-
tried venture.

The opinions of the witnesses called to testify as to
the value of services of Tom Mix to the wild west show
of plaintiff, were highly speculative, were little better

than guesses, and were incompetent: Ryder v. Jacobs, 182 Pa. 624; Graham v. Penna. Co., 139 Pa. 149; Galbraith v. Phila. Co., 2 Pa. Superior Ct. 359; Franklin Fire Ins. Co. v. Gruver, 100 Pa. 266; Lincoski v. Coal Co., 157 Pa. 153.

The courts of Pennsylvania and elsewhere have held that damages for alleged breach of contracts of employment of individuals of a unique and distinctive character are not susceptible of determination with the certainty necessary for legal proof: Phila. Base Ball Club v. Lajoie, 202 Pa. 210.

Damages that are speculative and uncertain as to amount are not recoverable: Seward v. Salt Mfg. Co., 266 Pa. 457; Cornelius v. Lytle, 246 Pa. 205; Wilson v. Warnwag, 217 Pa. 82; McKnight v. Ratcliff, 44 Pa. 156.

The court in banc, not having certified or stated that the admission of opinion evidence as to the value of the contract was the only reason for which a new trial could have been granted, and there being other questions involving the admissibility of oral testimony for which a new trial could have been granted, the order appealed from is not reviewable: Cleveland Worsted Mills Co. v. Meyers-Jolesch Co., 266 Pa. 309; Grossman v. R. R., 289 Pa. 169; Class & Nachod Brewing Co. v. Giacobello, 277 Pa. 530; Simmons Bordman Pub. Co. v. Products Co., 282 Pa. 521.

OPINION BY MR. JUSTICE SCHAFFER, June 30, 1932:

This suit was brought by the Western Show Company against Tom Mix to recover damages for breach of an oral contract under which he was to render personal services to that company. The jury returned a verdict in plaintiff's favor for $90,000. The court on defendant's motion granted a new trial, from which action plaintiff appeals, arguing that the new trial was ordered for a single reason, the court's conclusion that it had mistakenly admitted testimony of experts as to the

amount of damages sustained, which conclusion plaintiff submits to us was wrong, in that the evidence was properly admitted.

The plaintiff conducts a circus known as "The 101 Ranch Real Wild West Show." Defendant was well known as a motion picture and vaudeville actor. Plaintiff claimed, and the jury by its verdict so found, that it and the defendant entered into a contract whereby, in consideration of $10,000 a week and certain accommodations which were to be furnished to him, defendant was to appear with plaintiff's circus with his horse "Tony" in daily performances during the circus season of 1929, which it was estimated would last for about twenty weeks. It is admitted that he did not so appear, but entered into a contract with another circus, the Sells-Floto Company, in which he exhibited himself and his horse during the time covered by his engagement with plaintiff. On the trial the opinions of two witnesses long engaged in the circus business were received as to the value of the contract and defendant's services to the plaintiff. The court concluded apparently that the admission of this testimony was error and for this reason (and, as appellant contends, for this reason only) granted a new trial.

The proper measure of the damages for breach of contract in cases of this kind has given the courts trouble because of the great uncertainty there is in estimating them. Quite recently we were called upon to consider the subject in Weinglass v. Gibson, 304 Pa. 203. That case was an action for damages for breach of a theatrical contract, in which the defendant had agreed to the exhibition in his theatre during Christmas week of a play which plaintiff was to produce, the gross receipts from which were to be equally divided between plaintiff and defendant. The main dispute in the case was over the damages. It was shown that the plaintiff's production had given successful performances in New York, that there were well known actors in the cast, that Christmas

week is the most profitable week in the year for theatrical productions, and what the capacity gross receipts at defendant's theatre during that week would have been. The defendant did not offer any testimony to show that the receipts from the entertainment which he actually gave during the week were less than plaintiff's figures. Our conclusion was that these facts afforded "a reasonably fair basis" for calculating the plaintiff's loss. Our difficulty in the present case is not over the question of the admission of testimony of expert and qualified witnesses who would have knowledge and experience warranting them to speak on the subject of the loss which must have accrued to plaintiff by defendant's failure to perform his contract, but it is over the testimony which they gave and which as uttered does not show to our minds "a reasonably fair basis" for calculating the damages. We said further in that case (page 207) that "The factors used had in themselves an element of certainty at least sufficient to rest a common-sense conclusion upon, which was not a mere guess." This we think can not be properly said of the testimony on the record before us. We summed up our ruling with the statement "Where there is a basis in the evidence for a reasonable computation of the damages suffered considering the nature of the transaction, a verdict may be based thereon, though there may be involved some uncertainty about it."

One of the witnesses who testified in plaintiff's behalf on the subject of damages was Zack T. Miller, president and general manager of the plaintiff, who has had a long experience with the 101 Ranch Wild West Show and in employing all classes of actors and actresses and who said that the defendant had a world-wide reputation, and that it would have been greatly to the advantage of plaintiff to have had the defendant appear with it. The court ruled that the witness having testified that he had known the defendant, Mix, for many years and had seen him in every class of performance, and he, the witness,

having had long experience in the employment of actors and actresses for the kind of work the plaintiff's circus required, was qualified to testify as an expert on the question of damages and that their measure was the value of the contract at the time of breach. With this latter conclusion we do not disagree: Macan v. Scandinavia Belting Co., 264 Pa. 384, 392; Freedom Oil Works v. Williams, 302 Pa. 51. In answer to a question as to the value of defendant's services "generally" (thereby meaning not to the plaintiff alone) the witness answered $25,000 a week. He gave no basis for his estimate except that he said the seating capacity of the show was "around 9,000." He did not say whether the seating capacity was filled at the performances throughout the season or whether it was not, and, if not, whether in his opinion it would have been so filled if Mix had appeared. He said that the general price of admission was fifty cents for children and seventy-five cents for grown people, except for part of the season when they reduced it to twenty-five cents and fifty cents for the afternoon performances, and that if Mix had been with them, he would not have cut the price. He did not, however, state for how long a period the price was cut or what the attendance was. Miller further stated that had the defendant appeared he figured he would have shown to capacity houses in fair weather, but did not show how much less than capacity the audiences were in fair weather or how many performances were held on fair days. We see nothing in this testimony sufficient to afford "a reasonably fair basis" for calculating the plaintiff's loss.

The other witness was R. M. Harvey; his testimony is even more unsatisfactory. He too had been engaged in the circus business for many years and had employed actors to be featured as attractions for the shows. At the time he testified he was in the employment of plaintiff as publicity man. He had not long known defendant personally, but knew of him by reputation for a con-

siderable period as a star among the moving picture actors and as "the star cowboy of the films." He was asked whether he had heard the testimony of the witness Miller and replied that he had. He was further asked to assume that the testimony of Miller was correct, and, on the basis of that testimony, as well as his own information, to state his opinion as to the value of defendant's services to the plaintiff during the circus season of 1929, to which he replied from $25,000 to $30,000 a week. He stated that he based his opinion, not on defendant's acting "but on his reputation, fame, drawing power, and the increase in the box receipts"; he did not state what the last would have been, or what they actually were, although he said he knew what they were. He said that he considered the seating capacity and the earning capacity in the past and the capacity (evidently meaning number of patrons) which the circus would have had if the defendant had appeared, but failed to state what any of these factors were. Harvey also said that he would have increased the seating capacity if Mix had been with the show, but did not indicate how much he would have increased it. He further went on to say that if defendant had not acted at all, but had sat on a stool in front of the show, his association would have been worth $25,000 a week to it. Sound judgment is somewhat burdened to accept this statement as one of fact. He capped his testimony with the statement that if the defendant had attached himself to their show on May 24th, the date under the contract when he should have joined it, and continued with it to the end of the season, the increase in the receipts over what they actually were (without stating what they were) would have been over a million dollars. This statement apparently taxed the credulity of the trial judge, who remarked that this increase of a million dollars in business would mean an attendance of two million more people at fifty cents apiece, more than ten thousand a day.

We are unable to find in the testimony of this witness "a reasonably fair basis" for calculating the plaintiff's loss. We can understand how a witness who has had experience in the circus business might be qualified to testify that, if a certain performer of great reputation had appeared with the circus, in the opinion of the witness all of the seats would have been filled at every performance; that the seating capacity was so many; and that instead of all the seats being taken only a fraction thereof were and thus give some reasonable basis for calculating the loss by the performer's nonappearance. But that was not attempted by the proofs offered, and the jury, as the verdict shows, gave no credence to the estimates of damage which they heard.

A careful reading of the opinion of the court in banc, on the argument for judgment n. o. v. and for a new trial, and of its subsequent certificate filed, leaves us in much doubt whether the conclusion of its members was not that there ought to be a new trial in the case because they were not satisfied with the justice of the verdict. After discussion of the testimony as to damages, the court states, "This leaves the only remaining question, and that is as to whether or not we should reduce the verdict to $58,000 or grant a new trial," which gives color to our thought that the court below may have believed the verdict to be too high. In the supplemental certificate filed with us, it is said: "We wish to make entirely clear that the only reason a new trial was granted was because we admitted in evidence in the trial of the case the opinions of experts as to the value of the defendant's services. It was not in the exercise of the general discretion resting in a trial court to grant a new trial in the interest of justice that we allowed the defendant's motion for a new trial but for the legal reason discussed in our previous opinion......After a careful study of the record we were convinced that under the circumstances of the case the evidence as to the experts was inadmissible, and having reached that conclusion it

was inevitable to grant a new trial." If by this the court meant that the evidence was inadmissible because it did not contain a proper basis for the estimation of damages, we are in agreement with it; if however it was meant that expert testimony generally was inadmissible, we do not so hold. It is admissible where the witnesses are qualified and where it affords a reasonably fair basis for calculating the plaintiff's loss: Worden v. Connell, 196 Pa. 281, 286; McCullough v. Holland Furnace Co., 293 Pa. 45; Hoffer Oil Corp. v. Carpenter, 34 Fed. (2d) 589; 22 Corpus Juris, 507, "Evidence," section 599. "Damages are recoverable for losses caused or for profits and other gains prevented by the breach only to the extent that the evidence affords a sufficient basis for estimating their amount in money with reasonable certainty": Amer. Law Inst. Restatement, Law of Contracts, section 322.

Our review of the record has convinced us that in the exercise of a sound discretion it was proper to grant a new trial. The order so directing is affirmed.