## Warfel v. Hemp

*Charles L. Miller*, for plaintiff.

*M. G. Schaeffer* and *Windolph & Mueller*, for defendant.

ATLEE, P. J., March 4, 1934.—This is an action in assumpsit in which the plaintiff, J. P. Warfel, seeks to recover from the defendant, M. A. Hemp, the

sum of $1,454.01, with interest from June 15, 1929. The plaintiff is a cattle dealer doing business at the Union Stock Yards in Lancaster, Pa., and the defendant conducts a cattle draying business, hauling cattle to and from the Union Stock Yards. One Adam Fulmer was the general manager of the defendant's cattle trucking business and as such manager had authority to make agreements for the hauling of cattle on defendant's trucks. On or about June 14, 1929, the plaintiff sold to one Patsy Mutariello nine head of cattle of a total value of $1,481.51. The plaintiff went to see Adam Fulmer, representing the defendant in the trucking business, and, according to the plaintiff's testimony, the plaintiff told Fulmer that the plaintiff had a load of cattle to go to Mutariello "c. o. d." On the trial the plaintiff testified as follows:

"Q. What, then, did transpire between you and Mr. Fulmer? A. I told Mr. Fulmer I had a load of cattle to go to Patsy c. o. d. I asked him what the trucking would be. He said $27.50; but, he said: 'Don't put the trucking on your bill, because Patsy owes me a bill and I will send the two bills together and collect both amounts from him.' I told him I wanted him to collect for the cattle. He said, 'Make out your bill', which I did, and presented it to his office before they received the cattle, in an envelope marked plainly 'c. o. d.' Q. To whom did you deliver that? A. Adam C. Fulmer."

The plaintiff further testified: "I told him [Fulmer] to bring back a check for the cattle or not to deliver the cattle, and Fulmer agreed to deliver the cattle 'c. o. d.' "

The cattle left for the buyer's place in the truck of the defendant, and the next morning, according to the plaintiff's testimony, the plaintiff called upon Fulmer and asked Fulmer for the check. Fulmer replied that the truck driver had not brought back the check and said the reason the check was not brought back was that Patsy was not home, but Mrs. Mutariello said that she would see that the check was mailed. The plaintiff said, "Why didn't he call up before delivering the cattle?" Fulmer replied that he didn't know why.

The plaintiff testified that he has not been paid for the cattle, that he could not collect the bill for the cattle from Patsy, and that Hemp had refused to pay for the cattle. Throughout all the testimony Mutariello was often referred to as "Patsy". On cross-examination, the plaintiff testified that he told Fulmer to instruct the driver to bring back a check. The plaintiff was asked the following question:

"Q. For whatever reason you wanted the cattle sent c. o. d., you were satisfied to take Patsy's check? You did not give instructions to get cash? A. No."

There was some testimony that Fulmer told the plaintiff that Fulmer would collect the plaintiff's bill and an additional bill for drayage which Hemp had against Patsy, but the material part of the plaintiff's testimony as to his arrangement with Hemp through Fulmer, Hemp's agent, is as above set forth.

On the part of the defendant, M. A. Hemp, the defendant, testified that Adam C. Fulmer was his authorized manager in charge of the defendant's trucking business, but that he, Hemp, had no direct knowledge of the transaction between Warfel and Fulmer. Fulmer testified that the plaintiff never told him that the cattle were to be delivered c. o. d. He further testified that the business practice at the Union Stock Yards was substantially this: When a shipment of cattle is to be delivered for a livestock dealer to a consignee, triplicate bills are made and the original bill is given to the person who owes the money, the second copy is kept on file at the hauler's office, and the triplicate is a memorandum for the truck driver. Fulmer testified that the envelope marked "c. o. d.", which Warfel testified he delivered to Fulmer, was not delivered to him but that he does not know what Warfel delivered to the driver of the truck in which the cattle were

to be delivered to Patsy. He further testified that he never had with Warfel on the morning after the cattle were deliverd the conversation related by Warfel in regard to bringing back a check. Samuel B. Richardson, called on behalf of the defendant, testified that in June 1929 he was employed by the defendant and that he drove the truck in which the cattle were hauled, and delivered the cattle to Mutariello's place of business. Richardson testified that he did not receive any special instructions from Fulmer as to what he, Richardson, was to do; that all he received was the card or order to deliver the cattle. Richardson further testified that Warfel, the plaintiff, on the day the cattle were hauled and when the cattle were loaded, gave to Richardson a sealed envelope without any writing on the envelope. This witness specifically denies that there were on the envelope any markings such as the plaintiff testified were on the envelope, namely, "c. o. d." with figures on it. Also, this witness testified that Warfel told him "they might send the check along—he said they will send the check along back." According to the notes of testimony, Richardson testified:

"Q. Did he [Warfel] tell you not to deliver the cattle unless they gave you a check? A. No, sir. Q. Did he tell you what was in the envelope? A. No, sir. Q. Did he instruct you to demand a check? A. No, sir. Q. He testified that, in effect, your instructions were that the cattle were not to be surrendered unless you received the money or the check; is that correct? A. No, sir."

Substantially, this represents the issue between the parties. The court in its charge instructed the jury that they were to find what contract, if any, was created between the plaintiff Warfel and the defendant Hemp, acting by Hemp's agent Fulmer, and that there was a material dispute between the parties to this case as to just what were the terms under which the cattle were shipped. Then the court instructed the jury that if they found that these cattle were shipped c. o. d., which in the commonly used language of business means "collect on delivery", and if from the fair preponderance of the evidence they should further find that the failure of the defendant to follow the plaintiff's instructions resulted in loss to the plaintiff, then they would be justified in returning a verdict in favor of the plaintiff for such damages as they believed the plaintiff had suffered. The court permitted the jury to receive and to take out with them the calculation made by counsel for the plaintiff, and instructed the jury that in case they found for the plaintiff this calculation might be used as a basis for calculating the amount of the verdict. Four points submitted by the defendant were refused by the court without reading them to the jury, and these four points raise these questions:

1. There being no proof that Mutariello's check for the purchase price of said cattle would have been good and there being no proof of the value of Mutariello's check, the verdict of the jury should have been in favor of the defendant.

2. The plaintiff's statement of claim avers that the plaintiff specifically instructed defendant's agent, Fulmer, that the cattle were being shipped c. o. d. and that the defendant agreed to haul said cattle c. o. d., that is, not to deliver the cattle to the purchaser until the defendant or his agent should receive the purchase price, to wit, $1,481.51; but at the trial of the case the plaintiff testified that the instructions to defendant's agent were that the said cattle were not to be delivered to the purchaser until the defendant or his agent should receive the purchaser's check for said purchase price.

3. In the absence of evidence as to the value of Mutariello's check, or that said check if received by defendant's agent and delivered to the plaintiff would have been paid to the plaintiff upon presentation in the regular course of business, the plaintiff thus having proved no damages, the verdict of the jury should have been in favor of the defendant.

The verdict of the jury was in favor of the plaintiff in the amount of $1,454.01, which is the amount claimed by the plaintiff without interest. The amount of the bill for the cattle was $1,481.51, less the hauling or trucking charges of $27.50, thus leaving a balance of $1,454.01. Thus it will be seen that the defendant contends in the instant application that the plaintiff cannot recover because the plaintiff's allegations in the statement, that the cattle were to be delivered "c. o. d." and that the defendant agreed to collect the sum of $1,481.51 before turning over the cattle to Mutariello, have not been supported by plaintiff's proof that he told Fulmer to instruct the defendant's driver to bring back a check and that the plaintiff did not give instructions to get cash. On the trial, there was no evidence whatsover as to the value of Mutariello's check.

"Collection of money from a consignee upon delivery of goods, is not a common-law duty of an express company, and obligation arises only from contract, express or implied, which the company may make or refuse at its option"; Anthony et al. v. American Express Co. et al., 188 N. C. 407, 124 S. E. 753, 36 A. L. R. 460. Consequently, there was imposed upon Warfel the obliga- tion to prove, by a fair preponderance of the evidence, the fact that he had delivered the cattle to Hemp under a contract by which Hemp was to collect the purchase price and return it to Warfel. The plaintiff's statement avers that the instructions to Hemp were that the cattle were to be hauled c. o. d., that is, either the defendant or his agent should receive the purchase price, namely $1,481.51. The plaintiff testified on cross-examination that he instructed Fulmer to instruct the truck driver to bring back "a check", and specifically testified that the plaintiff did not give instructions to get cash from Mutariello. Reduced to its last analysis, consideration of the question of variance between allegations and proofs results in the conclusion that the plaintiff did not prove on the trial what he averred in his statement. The statement pleads that the defendant was to get the "purchase price" of the cattle. The plaintiff testified that what he was to get was a check.

In the case of Rathbun et al. v. The Citizens' Steamboat Company of Troy 76 N. Y. 376, the plaintiff shipped by the defendant certain goods consigned to a consignee. The goods were marked "c. o. d. $94.28." The carrier accepted of the consignee his check payable to plaintiff's order for the sum stated, and the check was delivered to and accepted by the shipper, who transmitted it for collection. The check was returned protested. The shipper then brought suit to recover damages for alleged failure to collect the sum named, and it was held that the unconditional acceptance of the check by the shipper was a waiver of the requirement to collect the money, and that therefore the shipper was not entitled to recover. Further it was held to be immaterial whether or not the drawer of the check had funds in the bank at the time the check was accepted or whether funds had been withdrawn later. The court held that the shipper, by accepting the check, took the risk of the check being worthless. The case just cited is considered important for the reason that Warfel testified on his cross-examination, as above noted, that he expected to receive a check for the cattle delivered to Mutariello. In the instant case, there was no evidence that the check of Mutariello would have been good even if the carrier had received the check and had delivered it to Warfel.

Thus the situation now confronting the court is:

1. The plaintiff's proof did not follow the allegations of the plaintiff's pleading.

2. The plaintiff proved no damages, in that he failed to show that the check of Mutariello was worth the amount sought to be recovered by the plaintiff in the instant action.

As to the court's right to enter judgment for the defendant notwithstanding the verdict because of variance between pleading and proof the court relies upon the case of Aaron v. Smith et al., 90 Pa. Superior Ct. 565, 569. In that case, the Superior Court decided that where the proof offered was of a contract different from that alleged in the statement, judgment for the defendant n. o. v. was properly entered. See also Zullinger v. Grebe, 72 Pa. Superior Ct. 209, 212. As to the second proposition, the jury should not have been permitted to speculate, or to guess, at the amount of damages sustained by the plaintiff. Damages are recoverable for losses caused by a breach of contract only to the extent that the evidence affords sufficient basis for estimating the amount of money with reasonable certainty: Western Show Co., Inc., v. Mix, 308 Pa. 215, 223. There was no such evidence here.

The court discharges the rule to show cause why a new trial should not be granted.

The court makes absolute the rule to show cause why judgment should not be entered for the defendant notwithstanding the verdict, and now enters judgment for the defendant and against the plaintiff notwithstanding the verdict in favor of the plaintiff.     From George Ross Eshleman, Lancaster, Pa.