Commonwealth, for use, *v.* Stein, Appellant, et al.

Argued April 20, 1937.   Before Kephart, C. J., Schaffer, Maxey, Drew, Linn, Stern and Barnes, JJ.

226

*Benjamin H. Levintow,* with him *Roy M. Livingstone,* for appellant.

*Samuel I. Sacks,* of *Sacks & Piwosky,* with him *Harry Shapiro,* for appellee.

OPINION BY MR. JUSTICE DREW, May 17, 1937:

This was an action in assumpsit against Jacob Stein, and National Surety Corporation, as surety, cn a bond which they gave in connection with a Fraudulent Debtor's Attachment instituted by Stein against the plaintiff, Max Rothstein. The attachment was made on July 14, and dissolved on October 9, 1933, after which this suit was brought. The trial resulted in a verdict of $4,500 for Rothstein, and, after a new trial was refused and judgment entered on the verdict, the defendant, Stein, took this appeal. The bond upon which the suit was founded is in the form provided by the Act of March 17, 1869, P. L. 8, as amended by the Act of May 24, 1887, P. L. 197, and the condition is that "if the said plaintiff shall fail to prosecute such attachment with effect or in case such attachment be quashed, dissolved or ended, the said plaintiff shall pay to the said defendant all legal costs, fees and damages which the said defendant may sustain by reason of such attachment."

Plaintiff was engaged in the business of jobbing bathing goods supplies, such as bathing suits, shoes, etc. His claim, as expressed in the statement of claim, is that he "was unable to sell and/or dispose of the said merchandise within the season, or before Oct. 9, 1933 . . . ," that "the fair, reasonable and market value of the said goods attached . . . was $8,462 . . . ." and that "at

the time the said attachment was released, the goods had depreciated in value so that they were then worth not more than $4,000 . . ." and also "that by reason of the issuance of the aforesaid attachment . . . the said plaintiff . . . was unable to withdraw funds from the bank to purchase new merchandise . . . and as a result he sustained a further loss." The attachment covered the stock of merchandise and $874.07 in a bank account.

The testimony supported the allegations of the statement but the proof as to damages was not so clear and decisive. The principal assignments of error question certain rulings on evidence, and the charge of the court on the measure of damages. The defendant insists the trial judge was not sufficiently precise in defining what was necessary to prove the alleged losses. With this we do not agree. The trial court properly admitted proof of the value of the goods when seized and their value when released, and charged the jury that deterioration was a legitimate element of damage. It also charged that plaintiff was entitled to interest upon his capital invested in the seized goods, and to interest upon the money attached in the bank. It declined to allow the claim for loss of profits in the operation of plaintiff's business, for the reason that proof under that head was insufficient. The defendant concedes that interest on the bank account was properly allowed, but claims that the rulings and charge relating to loss of value of the goods, and interest on the capital invested in the goods, were erroneous.

The goods were inventoried by plaintiff and his son, and they testified their value at the date of the attachment was $8,425.50, and at the time the attachment was dissolved was $4,487.50. The total annual gross sales over a period of five years, both before and after 1933, were also furnished. No inventory was taken by either the sheriff or the defendant. There was no contradictory testimony offered as to the market value of the mer-

chandise. The trial judge cautioned the jury regarding the interest of the plaintiff and his witness.

An element of doubt crept into the testimony because plaintiff was unable to sell the goods immediately after the attachment was dissolved. The summer season in which they were marketable having passed, he had perforce to wait until the same season of the next year, when he sold them in the best market he had and for the best prices obtainable. Some of the rubber goods had to be discarded because deterioration had made them unsalable, and others were considerably reduced in value thereby. It is obvious that plaintiff considered the amount he received from the sale of the goods, in parcels and at various times, to be their market value as a whole at the time the attachment was withdrawn. This knowledge of what the goods actually sold for in the market, plus the fact that he had twenty years experience in business, made it possible for him to fix an absolutely fair value of his goods at the time his claim accrued. It is probable that the best price possible was secured for the merchandise. It was the fairest method of sale available, and if considered only in the light of a mitigation of damages, the defendant profited thereby.

What authority there is on the general problem of permitting recovery for losses, sustained under somewhat similar unusual conditions, inclines towards this view: *Frankel v. Stern & Heller,* 44 Cal. 168; *Lowenstein v. Monroe,* 55 Ia. 82; II Sedgwick on Damages, (9th ed. 1912) section 682; II Sutherland on Damages, (4th ed. 1916) section 512. Damages are not to be deemed conjectural or speculative merely because they are incapable of calculation with mathematical exactness. Plaintiff's evidence was competent and furnished a reliable basis from which to ascertain the amount of his loss: *Commonwealth Trust Company of Pittsburgh v. Hachmeister Lind Company,* 320 Pa. 233. As we said by Mr. Justice WALLING, in *Osterling v. Frick,* 284 Pa. 397: "One injured by the default of another will not be

denied redress where his damages therefrom are shown approximately, although with less certainty because of injury of like character inflicted upon him by the acts of others. While damages in such case cannot be based on a mere guess or speculation, yet, where the amount may be fairly estimated from the evidence, a recovery will be sustained even though such amount cannot be determined with entire accuracy. . . . 'Substantial justice is better than exact injustice.' "

Although defendant urges the damages were not proven with sufficient precision, he did not take the stand to deny any of the allegations of the plaintiff. He sat through two trials of the case without saying a word. This is particularly significant because he manufactured and sold bathing supplies and could easily have qualified as an expert witness. The fact is he sold to the plaintiff most of the goods attached. He knew what was paid for them, their market value, that they were seasonable goods and would deteriorate, and, after hearing the testimony of the plaintiff on these points, he did not contradict it in any way.

Defendant conceded liability as to interest at six per cent on the amount attached in the bank, but denied owing anything as interest on the capital investment for any period. There can be no doubt that the invested capital was "frozen" just as securely by the attachment as was the bank account. Plaintiff lost the use of his investment and the court below ruled he was entitled to interest thereon for the period of the attachment. If this was error the defendant profited by it. The three-month period was the shortest possible time to which interest on the investment could be limited—it might have been allowed for the whole time the goods were unmarketable because of the seizure.

Although the Act of 1869, supra, has been in force for almost seventy years, a search of the case authorities reveals that only three times have the appellate courts of this Commonwealth ruled specifically upon the meas-

ure of damages under it: *Commonwealth, to use, v. Meyer,* 170 Pa. 380; *Commonwealth ex rel. S. S. Cord v. Magnolia Improvement Co.,* 163 Pa. 99; *Taylor v. Sattler,* 6 Pa. Superior Ct. 229. In the *Magnolia* case, we declared it to be the law that "The recovery allowed by the act is for all legal costs, fees and damages sustained by reason of the attachment. *This would include all damages for pecuniary loss ordinarily and naturally resulting from the seizure of the goods,* such as loss of sales, interruption of business and expenses necessarily incurred. . . ." [Italics added.] There can be no doubt that the damages shown here resulted in pecuniary loss from the seizure of the goods. They were the natural result of the wrongful act.

We agree with the learned court below that plaintiff proved his damages in a legal way; that there was no error in the rulings on evidence or in the charge to the jury; and that defendant has no cause for complaint. All the assignments are dismissed.

The judgment is affirmed.