Ashcraft *v.* C. G. Hussey and Company, Appellant.

Argued March 25, 1948. Before MAXEY, C. J., DREW, LINN, STERN, PATTERSON, STEARNE and JONES, JJ.

H. E. McCamey, with him Dickie, Robinson & Mc-Camey, for appellant.

George S. Goldstein, for appellee.

OPINION BY MR. JUSTICE DREW, April 12, 1948:

This action in trespass was instituted by A. J. Ashcraft, a carpenter and contractor, against C. G. Hussey & Company, a division of Copper Range Company, to recover damages for personal injuries sustained through the alleged negligence of defendant while plaintiff was engaged in carpentry work on defendant's premises. A jury trial resulted in a verdict of $10,000.00 in favor of plaintiff. Motions for judgment n. o. v. and for a new trial having been made by defendant and refused by the court en banc, this appeal followed. Defendant assigns as error the refusal of its motions.

On appeal from the refusal of judgment n. o. v., all facts and inferences deducible therefrom must be considered in the light most favorable to the party for whom the verdict was rendered. Applying this well settled principle of law the following are the pertinent facts.

In March, 1945, defendant entered into a contract with D. Carapellucci Company for certain construction work at defendant's manufacturing plant located at 2850 Second Avenue, Pittsburgh. Carapellucci subcontracted to plaintiff certain carpentry work, including the building of a wooden form inside a manhole so that it could be reinforced with concrete. The manhole in question is fourteen feet in depth and about five feet wide and is located sixty feet from defendant's boiler house.

Four boilers were located in the boiler house. A large metal box for coal on the top of the boilers, together

with the elevator that conveys the coal up to this bunker, make the entire installation look "to the casual observer" like one unit. Although three of the boilers were usually in operation, sometimes there were less when defendant's need for steam declined. The boilers were operated at a pressure of between 100 and 120 pounds per square inch. To dispose of the impurities and sediment that collected in the bottom of the boilers it was necessary to "blow" them and this was done daily at noon. The hot water (350° Fahrenheit) and steam was allowed to escape with a great force into a six inch pipe which led from the boilers into this manhole which contained a sewer outlet to the Monongahela River.

On May 11, 1945, at about 12:30 P.M., plaintiff was working in the manhole on a platform seven feet below ground level. Defendant's stationary engineer, Kelly, came to the manhole and told him "to get out for a few minutes, he was going to blow off steam. Then I could get back to work." Plaintiff immediately climbed out. At trial he testified as follows: "I waited four or five minutes after the steam blowed off until everything cooled down, then I started back to work." Plaintiff had just resumed his work when scalding hot water and steam again was ejected from the pipe. It hit him on the back of both legs below the knee, as the pipe was six feet below ground level and thus one foot above the platform on which he was standing. The pressure held him in the manhole and while attempting to extricate himself, his right arm was also burned. After the pressure ceased he climbed out and removed his overalls and the skin from both legs dropped down over top of his socks. He was given first aid and opiates and was removed to the hospital where he remained for more than six weeks.

Defendant's first contention is that the court below erred in not granting judgment non obstante veredicto. No serious argument is made, nor could be made, that negligence on the part of defendant was not proved.

Defendant, however, strongly insists that plaintiff must be declared contributorily negligent as a matter of law because he did not go to the boiler room and inquire whether defendant's employees had completed the "blowing" operation. We are convinced that only a jury could say whether or not plaintiff had acted negligently in only waiting "four or five minutes" after the steam had stopped coming out of the manhole before resuming work. The verdict indicates that the jury believed plaintiff's testimony that defendant's engineer Kelly said: "Can you get out for a few minutes, I am going to blow off steam. Then you can go back to work." A reasonable inference which the jury could draw from this statement was that defendant's engineer thereby gave plaintiff tacit permission to return to work after a few minutes.

It has long been the established law in this Commonwealth that contributory negligence may be declared as a matter of law only when it is so clearly revealed that fair and reasonable persons cannot disagree as to its existence: *Keiser v. P. T. C.,* 356 Pa. 366, 51 A. 2d 715; *Carden v. Phila. Transp. Co.,* 351 Pa. 407, 41 A. 2d 667. Under the facts now before us, reasonable persons could disagree as to the existence of negligence on the part of plaintiff and consequently the case was for the jury.

Defendant contends that a new trial should be granted because (1) the damages were speculative with respect to profits and (2) certain items of damage were submitted to the jury either, without having been properly set forth in the Statement of Claim, or, without having been properly proved at trial.

We have never held the damages that are not capable of *exact ascertainment* are for that reason not recoverable. "Damages are not to be deemed conjectural or speculative merely because they are incapable of calculation with mathematical exactness": *Com. v. Stein,* 326 Pa. 225, 228, 192 A. 95. Our law only requires that a reasonable quantity of information must be supplied

by plaintiff so that the jury may fairly estimate the amount of damages from the evidence. What we said in *Offensend v. Atlantic Ref. Co.*, 322 Pa. 399, 405, 185 A. 745, is applicable here: "Appellant's contention, that appellee was obliged to show by books, records, or accounts of some kind that the statement of net earnings was correct, cannot be sustained. Appellant was afforded a full opportunity to bring out on cross-examination the manner in which appellee arrived at his figures . . ."

Where, as here, profits are almost entirely the direct result of personal endeavor testimony regarding the loss of profits is admissible as a measure of earning capacity. In *Baxter v. Phila. & R. Ry. Co.*, 264 Pa. 467, 472, 107 A. 881, we held: "Strictly speaking, compensation for the loss of earning power as far as possible should be limited to earnings which are the result of personal effort, either physical or mental; in which profits from invested capital or profits from the labor of others must not be included . . . But where the predominating factor is the directing intellectual and physical labor of the individual, such business may be characterized as personal to that individual, though others with tools and equipment may aid in the work."

In the instant case the evidence clearly disclosed that no profits derived from invested capital were involved. As a carpenter and building contractor plaintiff bid on various construction projects and then physically supervised the work and actually did carpentry work with the other craftsmen. Plaintiff was entitled to damages to the extent that his earning capacity was impaired by this accident. See *Dempsey v. City of Scranton*, 264 Pa. 495, 107 A. 877. We cannot agree with defendant that the damages were speculative because the pecuniary loss sustained could not be proven with mathematical precision. Of necessity these damages must be an approximation and where, as here, they are proved with reasonable certainty, the precise amount of damages must be left to the discretion of the jury.

Our examination of the record discloses adequate medical testimony that plaintiff suffered a painful, permanent injury and that the natural result of the severe burns on his body was damage to his circulatory system. On appeal we limit our examination of the evidence to a determination whether or not sufficient proof was adduced at trial to justify submission of each factual question to the jury. We are of the opinion that plaintiff met that burden of proof. There was no abuse of discretion by the court below in refusing defendant's motion for a new trial. There was no objection to the amount of the verdict. We have carefully examined each of the twenty assignments of error but find no merit in them.

Judgment affirmed.