## The Bell Telephone Company of Pennsylvania v. Daniel

718

*Joseph F. Harvey*, for plaintiff.
*James E. O'Neill*, for defendants.

KURTZ, J., August 2, 1968.—Plaintiff telephone company sued defendants, the owners of a certain tractor-trailer truck, and its driver, seeking damages for injury done to telephone company equipment, cable, wire and similar items, and the cost of replacing that equipment after it had been knocked down and damaged by defendants' vehicle. A jury rendered a verdict in the total amount of the claim as shown by exhibit P-4. Defendants have moved for a new trial. Their liability is not questioned. In support of their motion they contend that the evidence admitted by the court as proof of damages was incompetent and irrelevant; consequently, it is argued that the verdict should have only been a nominal one.

The controversy turns upon the admission of exhibit P-3 into evidence (P-4, it was testified, is a summary of P-3). It was described as being a ledger page from plaintiff's books of account. It was competent if it satisfied the requirements of the Uniform Business Records as Evidence Act of May 4, 1939, P. L. 42, sec. 2, 28 PS §91b, which provides:

"A record of an act, condition or event shall, in so far as relevant, be competent evidence if the custodian or other qualified witness testifies as to its identity and the mode of its preparation, and if it was made in the regular course of business at or near the time of the act, condition or event, and if, in the opinion of the court, the sources of information, method and time of preparation were such as to justify its admission".

Concerning this statutory provision, the Supreme Court said in Henderson v. Zubik, 390 Pa. 521, 524 (1957) :

" . . . it is clear that the legislature intended to grant to the trial court discretionary power as to the admissibility of business records, provided, that they meet the standards set forth in the Act, and are otherwise admissible as evidence and not violative of other evidentiary rules".

We think that the questioned exhibit meets the requirements of the statute. It is the record of an act, condition or event, i.e., record of the labor performed and materials furnished to the job which repaired the instant damage. Without outlining in detail here the method of its preparation, it is sufficient for us to observe that the persons who were responsible for its preparation did explain the method employed to that end with particularity. There can be no doubt but that it was made in the regular course of business; it was part of plaintiff's regular accounting procedures such as would record and reflect the costs of any of its normal operations. It was made shortly after the work was performed and materials supplied. In our view, it is an accurate account, to the extent that any of plaintiff's accounts are strictly accurate, and it is a part of the records by which all plaintiff's costs are recorded and through which its rates are fixed and its business carried on. Our examination of the sources of information from which it was prepared and the method and time of its preparation warrants its admission.

Defendants also contend that because a certain correcting entry, reflecting additional hours of labor, was made upon P-3 some 14 or 15 months after the work was actually performed, the requirement of the statute concerning the time of making records has not been observed. All books of account are subject to correction at one time or another. The testimony upon

that point indicates that an omission in the records was discovered in the auditing of the accounts some time after the fact and that the record was then corrected as indicated. If we were to adopt defendants' contention in that regard, the practical effect of such a decision would be to annihilate the statute. If every correction to books of account had the effect of rendering those books incompetent as evidence because they had not been made "at or near the time of the act . . . ", etc., which they purport to record, such records would be admissible only in those rare cases when no corrections had been necessary. We think defendants' observation in that regard is not well taken. Thus, we conclude that P-3 is a business record within the meaning of the statute and that it was properly admitted into evidence as such if it proves that for which it was offered with sufficient particularity to make it relevant on the issue of damages.

In that regard, we should examine the evidence to ascertain what it is that this record purports to show. Plaintiff does not contend that its records are absolutely accurate in the sense that they record the cost of every nut or bolt which was used in the repair of the damage but it does contend that they accurately reflect the cost of this repair to the company as that cost has been determined through generally recognized and accepted utility company accounting procedures. Those costs are based on averages, as we will later show, and to that extent the exhibit P-3 is a generalization, or to be more precise, a statement of how much money, based on plaintiff's experience, is required to effectuate this repair.

Being more particular in that regard, the man hours of labor reflected in the record show the actual number of hours spent on the job by the various classes of labor employed. However, the supervisory time is not recorded in the same fashion, but that which is shown

represents the amount and cost of such time, including to a small extent a portion of the company president's salary, which the experience of plaintiff indicates is necessary for the supervision of that labor. Motor vehicle expense, Social Security taxes, vacation pay and certain other items of overhead are included upon a similar basis.

Regarding material, the records of plaintiff make reference to two classifications, exempt and nonexempt. Nonexempt material includes the larger items such as cable, the case coil and the case splices used in this operation, while exempt materials are those smaller items commonly referred to as nuts and bolts. Nonexempt materials are recorded item by item, while the figures for exempt materials are those which the company's experience has shown has been used for each dollar of nonexempt material employed in construction, and each maintenance or repair hour of labor expended. It should also be noted that the cost of nonexempt materials included in plaintiff's bill is not necessarily the actual price which plaintiff paid for those items. Those cost figures reflect the average purchase price of such materials which were a part of the company's inventory during the month in which they were used.

Precise proof as to the extent of damages is not a requisite to recovery. In Ashcraft v. C. G. Hussey and Company, 359 Pa. 129, 132, 133 (1948), the Supreme Court said:

"We have never held the damages that are not capable *of exact ascertainment* are for that reason not recoverable. 'Damages are not to be deemed conjectural or speculative merely because they are incapable of calculation with mathematical exactness': Commonwealth v. Stein, 326 Pa. 225, 228, 192 A. 95. Our law only requires that a reasonable quantity of infor-

mation must be supplied by plaintiff so that the jury may fairly estimate the amount of damages from the evidence". (Italics supplied.)

More recently in Small v. Flock, 407 Pa. 148, 154 (1962), it was said:

"How are those losses to be calculated? Obviously by the best evidence which is available. Justice Bell, now Chief Justice, said in Getz v. Freed, 377 Pa. 480, 485: 'In Betterman v. American Stores Co., 367 Pa. 193, 80 A. 2d 66, this Court, quoting from Lach v. Fleth, 361 Pa. 340, 352, 64 A. 2d 812, said (p. 207): "The law does not require that proof in support of claims for damages or in support of claims for compensation must conform to the standard of mathematical exactness. In Western Show Co., Inc. v. Mix, 308 Pa. 215, 162 A. 667, we held that evidence in support of a claim for damages was sufficient *if it afforded a reasonably fair basis*' for calculating the plaintiff's loss . . . If the facts afford a reasonably fair basis for calculating how much plaintiff is entitled to such evidence cannot be regarded as legally insufficient to support a claim for compensation" ' ".

In discussing the ascertainment of damages in a case involving an architect's delay in discharging his duties, this court said: "While damages in such case cannot be based on a mere guess or speculation, yet, where the amount may be fairly estimated from the evidence, a recovery will be sustained even though such amount cannot be determined with entire accuracy": Osterling v. Frick, 284 Pa. 397.

In Hoober v. New Holland W. Co., 43 Pa. Superior Ct. 262, 266, the Superior Court said: "Where it is proved that damage has resulted from an injurious trespass and the only uncertainty is as to the exact amount thereof such uncertainty is not ordinarily ground for refusing to allow any damage at all if the

evidence furnish a basis from which reasonable calculation can be made".

There was a necessity in this case to start the repair work as quickly as possible. The peculiar nature of plaintiff's business made it imperative that service be restored to company subscribers just as soon as that could be accomplished. Further, there was testimony to the effect that independent contractors were not available to do this type of work on such short notice. The skilled mechanics competent in this field of work were already on plaintiff's payroll; an outside contractor would have to recruit his labor before commencing the work. For this reason the fair and reasonable cost of making the repair could not be ascertained by determining how much an outside contractor would have charged to do the work.

In a similar situation where damage was done to a utility pole by a motorist, the Appellate Division of the Circuit Court of Connecticut in The Hartford Electric Light Company v. Beard, 3 Conn. Cir. 323, 213 A. 2d 536 (1965), held that plaintiff's overhead expenses in repairing the pole including payroll taxes, pension costs, vacation pay, and the cost of engineering and supervisory personnel could be included in computing the loss when it was shown that these figures were based upon the company's experience over a long period of time and were computed on acceptable accounting principles. That court said:

"The measure of damages to property without market value is the reasonable cost of repairs necessary to restore it to its former condition . . . The plaintiff's assistant supervisor of plant accounting testified at the trial on how the overhead costs were set up on the plaintiff's books and that such accounting practice was usual and recognized as proper. The method used by the plaintiff in determining the indirect costs of repairs was to use a percentage of the direct cost of

labor and materials, which percentage was based on the actual experience of the plaintiff as to what such indirect costs were to the company over many years. The defendant offered no evidence showing error or unreasonableness in this method, but he maintains that the indirect costs of repairs are too remote and speculative. Of course, the plaintiff may not recover damages which are conjectural and matters of guess-work, but if the plaintiff is able to prove with reasonable certainty indirect overhead costs of repairs and that these indirect costs have been correctly ascertained in accordance with sound accounting principles, then these indirect costs are a proper element of damage, and the plaintiff may recover them": 213 A. 2d 537.

Although we have found no Pennsylvania authority dealing with this point, we think that the same rule should be applied here. If an independent contractor had been available to do the work, he would have included the items of overhead listed above in any charge he would have made and, in addition, would have included a margin of profit. These defendants have benefited because the profit factor has not been included. Furthermore, they offered no testimony challenging plaintiff's figures; neither have they questioned the soundness of plaintiff's accounting methods. Under those conditions, we are of the opinion not only that plaintiff's books of account are competent evidence, but we think also that they are relevant proof as to the extent of the damage it has suffered.

We have now treated the reasons assigned in support of the motion to the extent that they have been pressed in defendants' brief and in the oral argument of their counsel. We have also reviewed the other reasons so assigned but find no merit in them. The motion is denied and a new trial refused.