464 A.2d 506

**BROAD AND LOCUST ASSOCIATES, a Pennsylvania Limited Partnership**

v.

**LOCUST–BROAD REALTY COMPANY, a Pennsylvania General Partnership, Appellant.**

Superior Court of Pennsylvania.

Argued April 19, 1983.

Filed Aug. 19, 1983.

Petition for Allowance of Appeal Denied Jan. 16, 1984.

Gilbert E. Toll, Philadelphia, for appellant.

Leonard Dubin, Philadelphia, for appellee.

Before WICKERSHAM, ROWLEY and WATKINS, JJ.

WICKERSHAM, Judge:

This is a consolidated appeal from two lower court orders enjoining appellant Locust-Broad Realty Company from foreclosing on the instantly considered commercial mortgage and disallowing a claim for counsel fees. The pertinent facts are as follows.

On June 11, 1980 appellee Broad and Locust Associates (hereinafter "Associates") entered into an agreement of sale with appellant Locust-Broad Realty Company (hereinafter "Realty") whereby Realty agreed to sell, and Associates agreed to buy, real estate in Philadelphia consisting of a twenty story office building and adjacent areas, such areas to be developed into a parking garage. The parking garage was to be built beside the Bellevue-Stratford Hotel.

The agreement of sale called for a selling price of $4,000,-000, subject to many adjustments. Approximately $2,500,-

000 of the price was to be paid in cash at the time of settlement and Realty was to take a $1,500,000 purchase money mortgage in the office building at 8% annual interest. Under paragraph 18(a) of the mortgage agreement Associates was prohibited from causing or allowing any lien or security interest to arise against the office building except for "any indebtedness incurred in order to finance mortgagor's construction activities on the adjoining property[.]" Reproduced Record at 33a.

Settlement was concluded on July 2, 1981. Thereafter, Associates obtained a loan commitment of $21,699,000 from Chemical Bank of which $12,622,000 was for the construction of the garage and $9,077,000 was for the renovation of the office building. The Chemical Bank loan was to be secured by a first mortgage on the parking garage and a second mortgage on the office building. Realty objected to this method of securing the loan, however, and refused to issue an estoppel certificate indicating that there were no outstanding defaults under the purchase money mortgage. Associates then filed an action in equity and moved for a preliminary injunction barring Realty from instituting any action under or related to the mortgage between Associates and Realty. A hearing was held before the Honorable Joseph P. Braig of the Court of Common Pleas of Philadelphia County on June 29 and 30, 1982. On July 1, 1982, Judge Braig granted the preliminary injunction and fixed bond at $5,000. Thereafter Realty requested that Associates pay the legal fees Realty had incurred in the action in accordance with the terms of their mortgage. Associates refused to do so; subsequently Judge Braig amended his order so as to enjoin an action for attorney's fees brought under the mortgage. Appeals from both orders followed.

Appellant Realty phrases the first eight questions involved as follows:

1. Whether Appellee's legal right to a Preliminary Injunction is clear, certain, unquestionable, and not subject to doubt?

2. Whether the Preliminary Injunction awarded Appellee which allowed it to alter the status quo and gain an advantage over Appellee [sic] is permissible under law?

3. Whether a mortgage holder is entitled to strict enforcement of a provision barring secondary financing?

4. Whether the terms and conditions of a mortgage freely bargained at arms-length are entitled to strict enforcement?

5. Whether in the context of enforcement of a commercial mortgage, a breach of a provision of the mortgage may be determined by the court not to be a breach by finding that the breaching act was "primarily" a portion of a permitted act under the mortgage?

6. Whether equity will aid a party to break its own contract freely negotiated?

7. Whether the "irreparable harm" requisite for the issuance of equitable relief may consist of a party's exposure to risks which were voluntarily and knowingly undertaken by the party?

8. Whether the evidence before the lower court supported a finding of irreparable harm?

Brief for Appellant at 3–4.

Essentially, Realty's position is that paragraph 18 of its purchase money mortgage agreement with Associates prohibits Associates from causing or allowing any lien or mortgage to be placed against the office building except as a result of a loan secured solely for construction of the garage. Realty points out that the loan between Chemical Bank and Associates provided for the renovation of the office building as well as the construction of the garage and, therefore, the second mortgage on the office building was, to some extent, security for its own renovation rather than security for the construction of the parking garage.

The relevant portion of the agreement between the parties provides as follows:

Except with respect to any indebtedness incurred in order to finance Mortgagor's Construction Activities on the Adjoining Property, without the prior written consent of

Mortgagee, Mortgagor shall not ... create or cause or permit to exist any lien on, or security interest in the Mortgaged Property.

Reproduced Record at 33a.

■ Initially, we note that "[o]n an appeal from a decree granting or denying a preliminary injunction, the appellant has a very heavy burden to overcome; such a decree will not be interfered with upon appellate review in the absence of a plain abuse of discretion by the court below." *Safeguard Mutual Insurance Company v. Williams,* 463 Pa. 567, 577-78, 345 A.2d 664, 670 (1975).

"In determining the propriety of the entry of an order granting a preliminary injunction, the question is whether there were any apparently reasonable grounds in the record to justify its issuance." *Fischer v. Department of Public Welfare,* 497 Pa. 267, 270, 439 A.2d 1172, 1174 (1982) (footnote omitted).

Here, an officer of Chemical Bank testified that the bank would not have made a loan to Associates solely to construct the parking garage because such a venture would be too speculative. The Chemical Bank officer also testified that it was necessary to improve the office building in order to construct the garage because the bank "felt that the upgrading of the office building, the increase in quality of tenant mix, the cash flow from the building would enhance the overall viability of the garage." Reproduced Record at 102a.

■ The lower court committed no abuse of discretion in granting the preliminary injunction. The bank officer's testimony quoted above clearly indicates that the refurbishing of the office building was a necessary concomitant to securing the financing for the construction of the parking garage. In that sense the entire debt owed by Associates to Chemical Bank was incurred in order to finance the construction of the parking garage; in order to build the garage it was also necessary to upgrade the office building.

We find no error on the part of the lower court in this regard.

Appellant Realty frames the next question involved as follows:

Whether the injunction bond was palpably inadequate and whether the Appellee's oral undertaking to provide security beyond the bond should have been made a condition of the injunction?

Brief for Appellant at 4.

Realty argues that the lower court abused its discretion in setting the bond for the injunction at $5,000 rather than some much higher figure.

■ The question of the proper amount of a bond for a preliminary injunction is within the discretion of the hearing court. *Safeguard Mutual Insurance Company v. Williams, supra.* Pa.R.C.P. No. 1531 provides, in relevant part:

(b) Except when the plaintiff is the Commonwealth of Pennsylvania ... a preliminary or special injunction shall be granted only if

(1) the plaintiff files a bond in an amount fixed and with security approved by the court, naming the Commonwealth as obligee, conditioned that if the injunction is dissolved because improperly granted or for failure to hold a hearing, the plaintiff shall pay to any person injured all damages sustained by reason of granting the injunction and all legally taxable costs and fees....

■ In *Roth v. Columbia Distributing Company,* 371 Pa. 297, 89 A.2d 825 (1952), the Pennsylvania Supreme Court affirmed a hearing court's order setting the amount of a preliminary injunction bond and noted that the unlikelihood that damage would be done to the injunctee was a factor weighing against requiring a larger bond. Although this preliminary injunction involves property worth millions of dollars, the actual damage Realty would unjustly suffer if the injunction were dissolved would most likely consist of counsel fees and the largely amorphous damage a primary

mortgagee sustains by having a secondary mortgagee behind it in priority for a while.[1] There was no abuse of discretion by the hearing court in setting bond at $5,000 in the circumstances of this case.

Realty also argues that the hearing court set the bond at $5,000 based at least partially on its belief that Chemical Bank would set aside an amount of money equal to the mortgage and that such amount would serve as additional security. Realty argues that no such funds have been reserved, but admits that the statements by Associates' counsel wherein he allegedly made such guarantees are not part of the record. In any event, we find the bond required to be adequate in view of the reasonably anticipated damages.

> Appellant Realty frames the final question presented as:
> Whether the court erred in amending its Preliminary
> Injunction without the filing of any pleadings, and without
> holding a hearing, and after the Preliminary Injunc-
> tion had been appealed to the Superior Court?

Brief for Appellant at 4.

Realty explains the factual predicate to this claim as follows: "[A]fter the lower court entered its Preliminary Injunction Order, appellant submitted to appellee a bill for its counsel fees pursuant to paragraph 25 of the mortgage. When appellee refused to pay the bill, appellant advised that it would foreclose...." Brief for Appellant at 25. Subsequently, Judge Braig entered an amended order concerning the preliminary injunction prohibiting foreclosure for counsel fees but providing, inter alia:

> This Amended Order shall not preclude defendant from
> filing a Complaint in Assumpsit against plaintiff for any
> claim for counsel fees for defense of the said equity
> action that defendant may wish to assert.

Initially we note that Realty's argument that the lower court issued its amended order after an appeal had been taken is meritless. The amended order was issued on July

---

1. Realty retains its mortgage on the property in question, of course.

28, 1982; a notice of appeal was not filed until July 30, 1982.

█ Judge Braig's amended order merely prevented foreclosure on the realty involved in this case and, therefore, preserved the status quo. Realty remains free to pursue its claim for legal fees in a separate action even while the amended order is in effect. "[A] preliminary injunction is designed to preserve the status quo pending final resolution of the underlying issues[.]" *Fischer v. Department of Public Welfare, supra,* 497 Pa. at 271, 439 A.2d at 1174. Judge Braig's amended order preserves the status quo, as does his original order, and we affirm both.

Orders affirmed.