533 A.2d 461

**Thomas S. CHRISTO and Blanche Greenberger, Appellees,**

**v.**

**TUSCANY, INC., a corporation, Brittany, Inc., a corporation, Phoebe M. Rennekamp, William A. Rennekamp, Antoinette B. Tchirkow, and Antoinette B. Tchirkow, Executrix of the Estate of Edgar G. Tchirkow, Deceased.**

**Appeal of Antoinette B. TCHIRKOW, Antoinette B. Tchirkow, Executrix of the Estate of Edgar G. Tchirkow, Deceased, Tuscany, Inc., a corporation and Brittany, Inc., a corporation.**

Superior Court of Pennsylvania.

Argued May 13, 1987.

Filed Nov. 2, 1987.

10

Maurice A. Nernberg, Pittsburgh, for appellants.

Douglas E. Cameron, Pittsburgh, for Greenberger, Tuscany and Brittany, appellees.

Before WIEAND, KELLY and POPOVICH, JJ.

KELLY, Judge:

Appellants appeal from dismissal of their counterclaim and entry of summary judgment in favor of appellees. Appellants argue that their recovery of damages for an improvidently issued injunction should not be limited by the amount of the bond. We agree. They further argue their damages recoverable should reflect lost interest income. We remand for fact-finding on this issue.

This appeal represents the first opportunity for this Court to rule directly on whether Pa.R.C.P. 1531(b) insulates a plaintiff from damages in excess of the bond amount when an injunction is later found to have been improvidently granted. Although the Commonwealth Court passed on a similar issue in *Juniata Foods v. Mifflin County Development Authority*, 87 Pa.Cmwlth. 127, 486 A.2d 1035 (1985), that case is not dispositive of the issue raised herein.[1]

This action has followed a complicated if not tortuous route through the courts of this Commonwealth, and we set forth that procedural history in detail, as follows. Plaintiffs, Thomas C. Christo and Blanche Greenberger, originally filed a suit at law to recover real estate commissions allegedly owed to them. On October 18, 1976, plaintiffs filed a complaint in equity and petition for preliminary

---

1. The Commonwealth Court held that a "bond is not a condition precedent to obtaining damages from a *government entity*." 486 A.2d at 1037. (Emphasis added). We do not have a government entity involved in this action. (See discussion, *infra*).

injunction against Tuscany, Inc., Brittany, Inc., Phoebe M. Rennekamp, William A. Rennekamp, Antoinette B. Tchirkow individually, and as executrix of the estate of Edgar G. Tchirkow, deceased [hereinafter appellants]. Plaintiffs/appellees filed the suit in equity when appellants caused the two corporations named as defendants in the prior suit to be dissolved.

A hearing on the equity petition was held on October 28, 1976, and, by order dated December 3, 1976, the court granted the preliminary injunction and required appellants to deposit $80,000 at First Federal Savings and Loan of Pittsburgh, in an interest-bearing account, as security for any judgments in favor of plaintiffs in the brokerage commission actions. By order dated March 21, 1977, the court ordered the funds transferred to a savings deposit at Concord Liberty Savings and Loan Association. The funds deposited in the savings account earned a return of five and three-quarters percent (5¾%) interest.

Appellants filed a demurrer to the equity action; the demurrer was denied. Appellants next, on March 19, 1979, filed an answer, new matter and counterclaim to the equity action. The counterclaim alleged that appellants were suffering damages by reason of the fact that the $80,000 security deposit was earning 5¾% interest, while investment rates were offering 10% interest returns.

On March 27, 1979 appellants moved to dissolve the injunction, or in the alternative, to have plaintiffs post a bond pursuant to Pa.R.C.P. 1531(b). The equity court denied the motion on April 2, 1979. Appellants filed a timely appeal to this Court; by opinion dated November 30, 1982, this Court reversed the order and remanded the case, finding that the equity court erred in failing to have plaintiffs post a bond. Pa.R.C.P. 1531(b). *Christo v. Tuscany, Inc.,* 308 Pa.Super. 564, 454 A.2d 1042 (1982).

Upon remand, on September 12, 1983, the lower court ordered plaintiffs to post a nominal bond of one dollar ($1.00). Appellants filed a timely appeal from this order, which was docketed in this Court at No. 1138 Pittsburgh

1983. In the interim, plaintiffs' original suit for broker commissions had been dismissed by the trial court on summary judgment, and that judgment had been unsuccessfully challenged through all stages of the appellate process. Consequently, after the original suit was finally litigated, motions were made in this Court at No. 1138 Pittsburgh 1983, including: appellants' motion for special relief; plaintiffs' motion to dismiss the equity suit for mootness; and answers thereto. After a hearing in this Court on February 9, 1984, the Honorable John P. Hester dissolved the December 3, 1976 injunction, directed the release of the escrowed $80,000 to appellants, and remanded the appeal at No. 1138 Pittsburgh 1983 (from the order imposing one dollar bond) to the lower court for an adjudication on appellants' counterclaim for damages which had been filed in March 1979. On remand, the lower court granted plaintiffs' motion for summary judgment. This appeal timely followed.

Appellant raises two issues on appeal:

I. Where a Plaintiff is ordered by the trial court to post only a one dollar ($1.00) injunction bond as security for Defendant's damages upon termination of the injunction proceedings, is Defendant limited to an action on the bond or the amount of the bond in its claim for damages for its economic losses from the injunction proceedings?

II. Where a Defendant is ordered to deposit substantial funds in a passbook savings account with an interest rate of 5¾ percent, when there are other investment opportunities paying 10 percent to 21 percent, are Defendant's damages so speculative as to be noncompensable in an action for damages?

We shall address these claims, *seriatim*.[2]

## I. AMOUNT OF BOND AS A LIMIT ON DAMAGES

■ Appellants' first issue raises a point not directly passed upon by our courts since the adoption by our Su-

---

**2.** We note appellants failed to raise in this appeal, following this Court's remand of the appeal at No. 1138 Pittsburgh 1983, any issue as to whether imposition of only nominal bond was an abuse of discretion by the trial court.

preme Court of the Rules of Civil Procedure in 1952. Appellants argue that they are not limited by the amount of the injunction bond in their claim for damages because Pa.R.C.P. 1531(b) authorizes recovery for "all damages" incurred. Plaintiffs counter that the rule should be construed so as to limit recovery to the amount of the bond. Therefore, we are called upon to resolve this conflict as to the proper construction of the language of Pa.R.C.P. 1531(b). Specifically, the rule states:

(b) Except when the plaintiff is the Commonwealth of Pennsylvania, a political subdivision or a department, board, commission, instrumentality or officer of the Commonwealth or of a political subdivision, a preliminary or special injunction shall be granted only if

(1) the plaintiff files a bond in an amount fixed with the security approved by the court, naming the Commonwealth as obligee, *conditioned that if the injunction is dissolved because improperly granted or for failure to hold a hearing, the plaintiff shall pay to any person injured all damages sustained by reason of granting the injunction* and all legally taxable costs and fees, or

(2) the plaintiff deposits with the prothonotary legal tender of the United States in an amount fixed by the court to be held by the prothonotary upon the same condition as provided for the injunction bond.

(Emphasis added).

Our duty is to accord the language utilized by the Supreme Court its plain meaning. Pa.R.C.P. 127(b); *Cf. Salvado v. Prudential Property and Cas. Ins. Co.*, 287 Pa.Super. 304, 430 A.2d 297 (1981). We construe the rule as a mandate that a petitioner file a bond, in the amount fixed by the court, prior to the court's issuance of the requested special relief. *Soja v. Factoryville Sportsmen's Club*, 361 Pa.Super. 473, 522 A.2d 1129 (1987); *Christo v. Tuscany, Inc., supra* (bond must be filed). The rule further states that the bond is subject to the condition that plaintiff shall pay from the bond "all" damages sustained by reason of the injunction upon dissolution of the injunction. Clearly,

the rule provides that the bond shall be subject to disbursement to pay damages; however, the rule is somewhat less than clear regarding the question of whether other funds may also be subject to disbursement to pay "all" damages.

To date, there have been no cases which have directly addressed this issue. However, the Commonwealth Court has passed on a substantially similar issue. In *Juniata Foods, supra,* the plaintiff, a governmental entity, sought and gained a preliminary injunction against defendant. The plaintiff posted no bond, as the Commonwealth is exempt from the need to post bond. Pa.R.C.P. 1531(b). When the injunction was dissolved as improperly granted, defendant sued the Commonwealth for damages. The issue was whether recovery was foreclosed as no bond had been posted. The Court held that a "bond is not a condition precedent to obtaining damages from a governmental entity." Rather, "[t]he bond requirement in Pa.R.C.P. 1531(b)(1) is merely to insure a ready source for payment of damages if due." *Juniata Foods v. Mifflin County Development Authority, supra,* 486 A.2d at 1037. Therefore, where no bond is set, an action for damages may still lie against the Commonwealth. This Court's task is to determine whether an action upon the bond would be the sole source of recovery from a non-governmental plaintiff.

As we deem the plain meaning of the express language of the rule ambiguous on this point, further analysis as to the rule's meaning must be made in accordance with the rules of construction set forth in the Rules of Civil Procedure. Specifically:

**Rule 127. Construction of Rules. Intent of Supreme Court Controls**

(a) The object of all interpretation and construction of rules is to ascertain and effectuate the intention of the Supreme Court.

(b) Every rule shall be construed, if possible, to give effect to all its provisions. When the words of a rule are clear and free from all ambiguity, the letter of it is not to be disregarded under the pretext of pursuing its spirit.

(c) When the words of a rule are not explicit, the intention of the Supreme Court may be ascertained by considering, among other matters (1) the occasion and necessity for the rule; (2) the circumstances under which it was promulgated; (3) the mischief to be remedied; (4) *the object to be attained;* (5) *the prior practice,* if any, including other rules and Acts of Assembly upon the same or similar subjects; (6) *the consequences* of a particular interpretation; (7) the contemporaneous history of the rule; and (8) *the practice followed under the rule.*

Pa.R.C.P. 127. (Emphasis added).

## A) *Prior Practice*

The statute which preceded Pa.R.C.P. 1531(b) was 12 P.S. § 2071: [3]

**§ 2071. Indemnity bond before injunction may issue.** No injunction shall be issued by any court or judge until the party applying for the same shall be given bond with sufficient sureties, to be approved by said court or judge, *conditioned to indemnify the other party for all damages that may be sustained by reason of such injunction.* 1844, May 6, P.L. 564, § 1.

(Emphasis added).

Prior practice, under this rule, was enunciated by the Supreme Court in *Azar v. Markle,* 311 Pa. 296, 166 A. 889 (1933). The Court, in a *per curiam* opinion, stated that a defendant's only remedy for damages from an injunction is against the bond. "The very purpose of such bonds is to indemnify defendants for 'all damages that may be sustained by reason of such injunction.' If the amount of the bond was inadequate, the attention of the chancellor should have been directed to that fact at the time it was filed." 311 Pa. at 298, 166 A. 889. (citation omitted). Accordingly, prior practice was to limit damages to the amount of the bond.

**3.** 12 P.S. § 2071 can be traced to the Act of May 6, 1844, P.L. 564, § 1.

B) *Contemporaneous History*

The Rules of Civil Procedure were first promulgated in 1952; Rule 1531(b) replaced 12 P.S. § 2071.[4] The rules were promulgated by our Supreme Court, assisted by a Procedural Rules Committee. Specifically, the Court noted that its intent was to make changes in the equity rules:

> Equity Rule 92, adopted by the Supreme Court, May 13, 1940, and as amended Nov. 28, 1941, read as follows:
>> Those Rules of Civil Procedure promulgated by the Supreme Court which are applicable to equity practice and procedure, shall prevail over any existing Equity Rules which are inconsistent therewith; and *the Equity Rules are modified, or abrogated, to the extent of such inconsistency,* as of the respective dates the dominant Rules of Civil Procedure became or become operative.

Purdon's Pennsylvania Statutes Annotated, 1967 edition, Title 12, p. 19. (Emphasis added). The prior rules, including the rule on bonds, were suspended. *See* Pa.R.C.P. 1550(4), suspending 12 P.S. § 2071 absolutely.

Crucial to our analysis is the fact that Rule 1531(b) contains different language than that previously utilized in Section 2071. Pa.R.C.P. 128 supplies, "[p]resumptions in Ascertaining the Intent of the Supreme Court" as aids in construction. One of the presumptions is that "if the Supreme Court has construed the language used in a rule ..., the Supreme Court in promulgating *a rule on the same subject matter which employs the same language intends the same construction* to be placed upon such language;.... Pa.R.C.P. 128(d). (Emphasis added). Although Rule 1531(b) covers the same subject matter as the prior rule, the Court chose not to employ the same language. Therefore, we may not presume that the construction of Section 2071 as exemplified by *Azar v. Markle, supra,* should be placed upon Rule 1531(b). *See also* Purdon's Pennsylvania Statutes Annotated, 1967 edition, Title

---

**4.** Section 2071 was repealed April 28, 1978, P.L. 202, No. 53, § 2(a)[205]; *see* 42 Pa.C.S.A. § 1722.

12, Ronald A. Anderson, Esquire, "Repositories of Pennsylvania Civil Practice," p. XXII.  We find that the use of different language suggests a different intent behind Rule 1531 and permits a different construction of the rule.  *See Rivera v. Philadelphia Theological Seminary of St. Charles Borromeo, Inc.*, 326 Pa.Super. 509, 474 A.2d 605 (1984), *aff'd as modified*, 510 Pa. 1, 507 A.2d 1 (1986) (it is a rule of statutory construction that a change in the language of a statute ordinarily indicates a change in the legislative intent).

In further support of finding a change between the prior construction of the rule and a new construction of the current rules, is appellants' argument that the Pennsylvania Rules of Civil Procedure were promulgated in 1952 in response to enactment of the Federal Rules of Civil Procedure in 1938.  The language of the federal rule governing injunction bonds, F.R.C.P. 65(c), is different from the rule adopted in the Commonwealth.[5]  Although the language is different, we deem federal practice helpful in ascertaining our Supreme Court's intentions when promulgating Pa.R. C.P. 1531(b);  the federal rule and practice do not control but do illuminate the historical context in which our state's rules were promulgated.  Many states, including Pennsylvania, promulgated new rules of civil procedure, intended to govern both law and equity actions, in response to the federal rules.  *See* Wright & Miller, *Federal Practice and Procedure*, § 1008 at 48 (1973).

Posting a bond in federal courts, as in Pennsylvania, is mandatory prior to issuance of injunctive relief.  However,

> [t]he mandatory nature of the security requirement is ameliorated by the remaining portion of the first sentence of Rule 65(c), which states that the security required shall

---

**5.** F.R.C.P. 65(c) states:

> **(c) Security.**  No restraining order or preliminary injunction shall issue except upon the giving of security by the applicant, in such sum as the court deems proper, for the payment of such costs and damages as may be incurred or suffered by any party who is found to have been wrongfully enjoined or restrained.  No such security shall be required of the United States or of an officer or agency thereof.

be 'in such sum as the court deems proper, for the
payment of such costs and damages as may be incurred
or suffered by any party who is found to have been
wrongfully enjoined or restrained.' As a result of this
passage, the *discretion* permitted a federal court sitting
in equity *is available to a court in setting the amount
of security that is required* by Rule 65(c). *Accordingly,
the judge usually will fix security in an amount that
covers the potential incidental and consequential costs
and either the losses* the unjustly enjoined or restrained
party will suffer during the period he is prohibited from
engaging in certain activities *or the complainant's un-
just enrichment* caused by his adversary being improper-
ly enjoined or restrained.

Wright & Miller, *supra*, § 2954 at 525. (Emphasis added).
The security is set, in a balancing process, to cover foresee-
able damages. Practice in federal courts is to allow recov-
ery beyond the bond amount where actual damages exceed
foreseeable damages covered by the bond, either by a
motion pursuant to F.R.C.P. 65.1 or by suits at law for
unjust enrichment or malicious prosecution. Wright & Mil-
ler, *supra*, § 2973 at 652.

## C) *Practice followed under Rule 1531(b)*

Since the promulgation of the Pennsylvania Rules, the
issue of whether recovery should be limited to the amount
of the bond has not arisen, although other issues involving
the interpretation of Rule 1531(b) have been decided. In
*Safeguard Mutual Insurance Co. v. Williams*, 463 Pa. 567,
345 A.2d 664 (1975), this Court considered whether the
amount set by the trial court for the bond, pursuant to
Pa.R.C.P. 1531(b), was inadequate because losses could
total an amount greater than the bond. The Court, in
reviewing the amount, utilized a test "balancing ... the
equities of the respective sides...." 345 A.2d at 671. The
Court found no abuse of discretion in the amount set,
especially in light of the inability of the appellant to "credi-
bly establish its possible loss." 345 A.2d at 671.

In *College Watercolor Group, Inc. v. Newbauer, Inc.,* 468 Pa. 103, 360 A.2d 200 (1976), the Court held that a trial court improperly dissolved a preliminary injunction bond, noting that the bond "was to protect appellants in the event that the preliminary injunction was improperly granted and damages [were] sustained thereby." 360 A.2d at 207–208. The Court further stated "appellants are entitled to look to the bond for recovery." 360 A.2d at 208. There is no indication, however, whether appellants could look beyond the bond for recovery.

Other recent decisions of this Court have also focused on the bond amount itself to see if it is adequate protection for foreseeable damages, and a proper exercise of lower court discretion. *Broad & Locust Associates v. Locust–Broad Realty,* 318 Pa.Super. 38, 464 A.2d 506 (1983) (bond adequate in view of reasonably anticipated damages); *Christo v. Tuscany, Inc., supra* (court's failure to set bond constituted error).

### D) *Object of the Rule*

The cases cited dealing with Rule 1531(b) assist our analysis by delineating the purpose behind mandating that a bond be set. A bond is required so as to provide protection to a wrongly enjoined party; the bond provides a source of funds which may be used to pay to an injured defendant the "damages sustained by reason of granting the injunction." *College Watercolor Group, Inc., supra.* Because the rule is mandatory, some protection will always be afforded an enjoined party.

However, the case law enunciates a caveat that, in practice, the bond amount is not set to cover "all damages" but only those that are reasonably foreseeable. *See Broad & Locust Assoc., supra.* The trial court must determine the amount after balancing the equities involved on a case by case basis. *Safeguard Mutual Ins. Co., supra.* For instance, plaintiffs may be unable to provide sufficient security where damages could be great, or where plaintiff is impecunious, yet the court may determine, based upon the

balance of the equities, that the injunction should nevertheless issue. Consequently, a relatively low bond in light of possible damages may be set.

### E) *Consequences of the Rule's Interpretation*

Our analysis of the consequences of appellants' suggestion, that recovery in excess of the bond amount is not prohibited by the rule, leads us to the conclusion that this construction carries the weight of reason. We are aware that courts, in setting the bond amount originally, are not in a position to accurately and definitively gauge the amount of damages which may be incurred as the result of an improvidently issued injunction. Courts sitting in equity on motions for special relief have a duty to act quickly to prevent "immediate and irreparable injury." Pa.R.C.P. 1531(a). The court's decision-making process must balance competing concerns; its primary focus is on whether to grant the relief requested, rather than on what potential damages might be incurred if the injunction is later determined to be erroneously issued. The preliminary injunction hearing does not function as a final hearing on the merits, but is held only when needed to settle factual disputes arising from the pleadings. *Township of Clinton v. Carmat, Inc.*, 288 Pa.Super. 433, 432 A.2d 238 (1981); *Wood v. City of Pittsburgh*, 74 Pa.Cmwlth. 450, 460 A.2d 390 (1983). Consequently, there may not be a full hearing wherein the issue of potential damages could be discussed.

Even where there is a hearing, an equity court has neither the time nor the resources to conduct a searching fact-finding review of the amount of damages which may ensue; this type of detailed fact-finding is more properly reserved until the final hearing, after damages have in fact occurred, and are no longer a matter of prognostication. Thus, when issuing the injunction, the equity court is required to set the bond at an amount which constitutes a reasonable measure of protection but may not be in a position to conduct an exhaustive inquiry to determine the amount of damages with certainty.

### F) *Conclusion*

Our analysis is complete. Having considered the prior rule, Section 2071, and prior practice as exemplified by *Azar v. Markle, supra,* we find that the promulgation of the Rules of Civil Procedure in 1952 signalled a change with prior practice. This change is demonstrated by the decision not to utilize the language of Section 2071 in Rule 1531(b). The use of different language suggests that a different construction of the rule could emerge.

The use of different language also reflects the fact that Pennsylvania's Rules of Civil Procedure were promulgated, at least in part, in response to the federal rules promulgated in 1938; the federal rule governing posting of a bond prior to issuance of a preliminary injunction allows recovery beyond the bond if the injunction is later determined to be improvidently granted. Both federal practice and Pennsylvania practice have evolved such that the bond is not intended to be a definitive measure of damages but only an equitable measure of foreseeable damages. *Compare Azar, supra,* and *Safeguard Mutual Ins. Co., supra.*

We are persuaded that a construction similar to the federal rule may and should apply to Rule 1531(b). We hold that the bond amount set pursuant to Pa.R.C.P. 1531(b) does not set a limit upon recovery for damages from a wrongly issued injunction. Therefore, should the injunction be found to have been improperly issued, actual damages should be determined, and the enjoined party shall be free to seek recompense for "all damages" accrued. The enjoined party may use the bond amount as a source of damages payment but that party is not limited to the protection afforded by the bond. *Accord Juniata Foods, supra.* Therefore, we find appellants' argument that they should not have been limited to the bond amount well-founded, and we reverse that part of the order of July 29, 1986 limiting appellants' damages to the bond.

## II. AMOUNT OF DAMAGES

Appellants' second and final contention is that they should be able to recover as damages their lost interest

income on the escrowed $80,000; they urge this Court to measure their damages by the difference between the interest rate received at the savings account where appellants were ordered to place their money, which was five and three-quarters percent (5¾%), and the interest the money would have earned in the investment market. Appellants assert that rates of ten percent (10%) and greater were available for investments during the time appellants' funds were in escrow.

Plaintiffs respond that: lost profits in the form of interest income are noncompensable, *citing Ashcraft v. C.G. Hussey & Co.*, 359 Pa. 129, 58 A.2d 170 (1948); even if appellants are entitled to lost profits, their damages are limited to the legal rate of interest of six percent (6%), *citing* 41 P.S. § 202, *Traffic Safety Co., Inc.*, 21 B.R. 669 (Bkrtcy.Pa.1982); and, because plaintiffs did not enjoy the use of the funds while in escrow, there is no equitable reason for an award of damages.

The trial court held that appellants' damages were limited to the one dollar bond; but, even if the bond amount was not the limit of recovery, the trial court opined that the damages appellants seek are not recoverable because the appellants chose to place their escrowed funds in a low interest account, and because the damages were too remote and speculative to be recoverable. We note the record does not contain facts to support either of the trial court findings.

As to the first trial court finding, we note that the court's order directed appellants' funds be placed in a savings deposit at a particular savings and loan institution.[6] The

---

**6.** Specifically, the order stated:

IT IS HEREBY ORDERED AND DECREED, that

First Federal Savings & Loan Association of Pittsburgh make cashiers checks payable to Maurice A. Nernberg, Jr., Esq., and Frank Mast, Esq., for deposit to Concord Liberty Savings and Loan Association in the name of Maurice A. Nernberg, Jr. Esq. and Frank Mast, Esq., with the following endorsements:

'BOTH SIGNATURES REQUIRED FOR WITHDRAWALS. NO WITHDRAWALS EXCEPT BY ORDER OF COURT SAVINGS DEPOSIT'

record contains no evidence as to whether there was more than one, or any higher yielding savings deposits at that particular savings and loan institution. Thus, there is no basis in the record for the trial court's finding that appellants chose this account. We must reject findings which have no support in the record. *Thompson v. Thompson*, 451 Pa. 546, 301 A.2d 644 (1973); *Community Sports, Inc. v. Oakland Oaks*, 429 Pa. 412, 240 A.2d 491 (1968).

■ Secondly, the trial court's holding that damages were remote and speculative was made without benefit of a fact-finding hearing; the court, on remand from this Court after dissolution of the injunction, dismissed the counterclaim without an evidentiary hearing. However:

Pa.R.C.P. No. 1517(a) requires a chancellor to make specific findings of all facts necessary to determine the issues in the case and to support the decree and where such findings are general or absent, the cause must be remanded to the chancellor for the required findings. *Thompson v. Thompson*, 451 Pa. 546, 301 A.2d 644 (1973); *Community Sports, Inc. v. Oakland Oaks*, 429 Pa. 412, 240 A.2d 491 (1968).

*Sack v. Feinman*, 489 Pa. 152, 166, 413 A.2d 1059, 1066 (1980), *aff'd after remand*, 495 Pa. 100, 432 A.2d 971 (1981). The court failed to conduct a hearing to determine whether, in fact, investment opportunities were paying returns of ten to twenty-one percent as appellants claim and whether appellants would have availed themselves of such opportunities. Certainly such rates of interest are capable of being determined with certainty and thus are in no way speculative; similarly, appellants were entitled to present evidence that the order in fact prevented them from investing at the

\* \* \*

And that a Savings Deposit shall be made in CONCORD LIBERTY SAVINGS & LOAN ASSOCIATION endorsed as follows:
'BOTH SIGNATURES REQUIRED FOR WITHDRAWALS. NO WITHDRAWALS EXCEPT BY ORDER OF COURT SAVINGS DEPOSIT'

\* \* \*

(Emphasis added).

market rates. Thus, the trial court's order cannot be affirmed on the grounds stated.

We next turn to the legal arguments raised by the parties. We find it important to note initially that appellants do not argue that the trial court's order of March 21, 1977, directing appellants to place the escrow funds in Concord Liberty Savings & Loan, was an abuse of discretion; they readily acknowledge that in granting the special relief to the plaintiffs the court in equity had broad authority to balance competing interests. Hence, the selection of a low interest bearing highly liquid savings account is not challenged. Rather, appellants contend that plaintiffs must compensate appellants for the damages (lost interest income) suffered as the result of the order. The issue, then, is not whether it was reasonable for the trial court to burden appellants but whether plaintiffs should have to compensate appellants for the damage caused by the burden, upon determination that the injunction was improvidently granted.

■ Our review indicates that the law in equity is settled: in equity cases, the award of damages and rate of interest thereon is allowed at the discretion of the chancellor.[7] *Daset Min. Corp. v. Industrial Fuels Corp.*, 326 Pa.Super. 14, 473 A.2d 584, 595 (1984). *See also Murray Hill Estates, Inc. v. Bastin*, 442 Pa. 405, 276 A.2d 542 (1971). Lost profit damages resulting from an improvidently granted preliminary injunction may be recoverable where the damages directly result from the injunction, and the damages are ascertainable with reasonable certainty. *Compare Delahanty v. First Pennsylvania Bank, N.A.*, 318 Pa.Super. 90, 464 A.2d 1243 (1983).

■ Plaintiffs cite *Ashcraft v. C.G. Hussey & Co., supra,* for the proposition that profits from investment capital may not be included in the measure of lost profits. *Ashcraft* involved a suit to recover lost future earnings due to injuries plaintiff sustained through the negligence of the

7. We distinguish between the damages of lost interest income and the interest which the court may grant upon an award of damages.

defendant. The Court held that plaintiff's damages for impairment of his *earning capacity* were not speculative. The court further opined that the measure of lost earning capacity should be limited to "personal effort, either mental or physical" rather than lost profits from investment capital. *Ashcraft, supra* 58 A.2d at 173. *Ashcraft* does not purport to mandate that damages in other types of actions cannot be measured by lost profits; the holding applies only to personal injury actions. *Ashcraft* does not address the issue of the measure of damages sustained through a grant of a preliminary injunction; therefore, it is inapposite.[8] Rather, the rule in equity cases is that damages may include whatever the court in its discretion determines to be equitable. *Daset, supra.*

Nor is the measure of damages limited to the legal rate of interest. The statute cited by plaintiff, 41 P.S. § 202, provides that the legal rate of interest applies where authorized by law or by private agreement. Neither statute nor caselaw limits recovery of damages in equity actions to the interest rate of six percent (6%). To the contrary, Rule of Civil Procedure 1531(b) authorizes recovery of "all damages" sustained by an improvidently granted injunction without any expression of limitation to the legal interest rate. Thus, there is no statutory authority to limit the measure of damages to six percent (6%); rather, clear statutory language authorizes recovery of "all damages." Furthermore, *"the decided trend of* the courts of law and *courts of equity* has been to break away from hard and fast rules and charge and *allow interest in accordance with principles of equity,* in order to accomplish justice in each particular case...." *Murray Hills Estates v. Bastin,* 442 Pa. 405, 276 A.2d 542 (1971). *See also Sack, supra; Daset Min. Corp., supra* (courts sitting in equity take an equitable approach in determining interest as an element of

---

8. We do not herein decide the continuing validity of *Ashcraft;* the distinction between labor income and capital income as set forth in *Ashcraft* is by no means undebatable.

damages).[9]

In light of express statutory language authorizing recovery of "all damages" sustained, and in full accord with the authority of the chancellor in equity cases to measure damages by equitable principles, rather than by the legal rate of interest, we find the legal rate of interest provided in 41 Pa.C.S. § 202 has no application to this equity case; and, we find that plaintiffs' argument that lost interest income damages are limited to the legal rate must be rejected.

Finally, plaintiffs argue that because "there is no evidence of record that [plaintiffs] had the use of the escrowed funds or received any interest on such amount," appellants are not entitled to equitable damages greater than the six percent (6%) legal interest rate. (Appellees' brief at 22–23). First, as decided above, the legal rate does not apply to this equity action. Second, plaintiffs' argument ignores the fact that plaintiffs desired, sought and gained the injunction; thus, they did enjoy a benefit by reason of having the funds in escrow. Plaintiffs obtained security for potential judgment in the amount of $80,000 while their suit at law for broker's commissions was being litigated. Moreover, appellants clearly suffered a detriment, i.e., the loss of the control of those funds and profits to be derived therefrom while those funds were in escrow. Finally, we perceive no reason why appellants should be undercompensated for provable losses merely because the plaintiffs did not make a financial profit on the escrowed funds. The plaintiffs' beneficial use of the funds is not a prerequisite to a finding that appellants suffered damages.

There is no reason, as a matter of law, why appellants should be precluded in their attempt to prove and recover

---

**9.** Appellees cite *Traffic Safety Co., Inc., supra,* in support of their contention that damages are limited to six percent (6%). However, again, the facts of the case cited as authority are inapposite, as *Traffic Safety* did not involve a claim for damages by reason of a preliminary injunction, but rather an action against a trustee in a bankruptcy proceeding for misappropriation of funds. Furthermore, *Traffic Safety* is clearly not in accord with recent trend of equity cases. *See Murray Hills Estates, supra.*

all damages accrued by reason of the grant of the preliminary injunction. Appellants must, on remand, prove that the market rate of interest to be used as a measure of damages can be ascertained without resort to speculation. Further, appellants must establish by a preponderance the fact of proximate causation, i.e., that but for the injunction, the escrowed funds would have been invested at the rates available. *See Delahanty, supra.* Clearly, these are facts which cannot be determined at the appellate level.

Thus, we have determined that appellants are not limited in their recovery to the amount of the bond, and that appellants should have the opportunity to meet their burden of proof on the damages issue. Accordingly, we remand appellants' counterclaim to the trial court for proceedings not inconsistent with this opinion. *Sack, supra.*

Order reversed and remanded. Jurisdiction relinquished.