**SPECS/ATS Inc. v. Uricchio**

C.P. of Montgomery County, no. 98-13585.

*Philip Katauskas,* for plaintiff.
*Joel Cardis,* for appellants.

SALUS, *J.,* December 2, 1998—These appeals stem from two orders of this court, dated August 24, 1998 and September 14, 1998, in which this court issued a preliminary injunction against Joseph Uricchio, Joseph Morwald, and Integrated Service Solutions Inc., appellants. This injunction enjoined appellants from soliciting business from customers of SPEC/ATS Inc., plaintiff, which pertained to confidential information contained in plaintiff's purchase orders and contracts existing as of the date of Mr. Uricchio's resignation on May 18, 1998. Appellants raise 11 points of appeal in their 1925(b) concise statement of matters complained of on appeal. These points of appeal, however, can be simplified to two issues. First, appellants contend that this court's August 24, 1998 order was improperly entered because there was no basis for this court to issue a preliminary injunction against appellants. Appellants support this contention by stressing that there is no evidence which demonstrates either that appellants interfered with plaintiff's business relationships or that plaintiff has suffered the requisite

harm. Second, appellants argue that this court's September 14, 1998 order was also improperly entered because the monetary amount of the injunction-security bond set by this court is inadequate and is not supported by the evidence. These issues will be addressed below.

## FACTUAL AND PROCEDURAL HISTORY

This case grows out of plaintiff's allegations that appellants have both misappropriated plaintiff's proprietary information and test equipment as well as used such information and equipment to their advantage in competing with plaintiff for new business.

Plaintiff is a Pennsylvania corporation which provides technical services to industrial and pharmaceutical companies nationwide. On June 4, 1998, plaintiff purchased the assets of American Technical Services Group Inc. Among the assets purchased by plaintiff were Standard Operation Procedures Manuals and Validation Books, both of which contained highly confidential proprietary materials and database information about ATS. Before the time of this purchase, however, Mr. Uricchio and Mr. Morwald became privy and gained access to much of the confidential information contained in these manuals and books as well as to plaintiff's test equipment during their employ with the company as senior-level corporate employees. Upon their resignation from the company in late May 1998, Mr. Uricchio and Mr. Morwald retained and refused to return to ATS the trade secrets and test equipment now owned by plaintiff. Consequently, plaintiff brought this action in equity to enjoin appellants from continuing its interference with plaintiff's customer relationships. As a result, this claim set in motion the procedural events set forth below.

On July 17, 1998, plaintiff filed a verified complaint and a motion for a preliminary injunction. Appellants filed its answer with new matter and counterclaim on July 28, 1998.

Counsel for both parties were present for an in camera hearing held before the Honorable Samuel W. Salus II, of this court on August 19, 1998. By order dated August 24, 1998, this court granted plaintiff's motion for a preliminary injunction. This order enjoined appellants from conducting business with any of ATS's customers who existed before the resignation of Mr. Uricchio and Mr. Morwald. This order also directed appellants to place in an escrow account any monies received from all of appellants' other clients until a resolution of this case is reached.

By order dated September 14, 1998, this court denied appellants' motion for reconsideration of the August 24, 1998 order and also directed plaintiff to file with the prothonotary an injunction-security bond in the amount of $7,500. Consequently, appellants appealed both of these orders to the Superior Court of Pennsylvania on September 23, 1998.

## DISCUSSION

In determining the propriety of the entry of an order granting a preliminary injunction, the question to address is whether there were any reasonable grounds which justify its issuance. *Fischer v. Department of Public Welfare*, 497 Pa. 267, 270, 439 A.2d 1172, 1174 (1982). An appellant has a very heavy burden to overcome; an order granting or denying a preliminary injunction "will not be interfered with upon appellate review in the absence of a plain abuse of discretion by the court below." *Safe-*

*guard Mutual Insurance Co. v. Williams,* 463 Pa. 567, 578, 345 A.2d 664, 670 (1975). In fact, an appellate court may reverse a lower court's order "only if there are no grounds to support the decree or if the rule of law was palpably erroneous or misapplied." *Chmura v. Deegan,* 398 Pa. Super. 532, 535, 581 A.2d 592, 593 (1990). (citations omitted) All that is reviewed is whether "the party seeking the [preliminary injunction produced sufficient evidence to] show that substantial legal questions must be resolved to determine the rights of the respective parties." *Palladinetti v. Penn Distributors Inc.,* 695 A.2d 855, 863 n.11 (Pa. Super. 1997). (citations omitted) This court will thus evaluate appellants' arguments against this limited standard of review.

Appellants argue that this court had no basis for entering a preliminary junction against them. Appellants argue that plaintiff did not fully demonstrate that appellants actually interfered with plaintiff's contracts. They argue that the exhibit offered by plaintiff to show this interference is not proper evidence because it was not accurate and because it was not presented to this court until after the completion of the in camera hearing. Moreover, appellants argue that they are permitted to compete with the plaintiff for the business of the customers identified in this court's August 24, 1998 order because these customers were customers of the appellants before the appellants were employed by ATS, because these customers are well known in the industry, and because the contracts did not involve confidential information since they concerned commonly known time-and-material concepts developed by Mr. Uricchio prior to his employment with ATS. Consequently, appellants argue

that plaintiff has not suffered any immediate or irreparable harm.[1]

This court's issuance of a preliminary injunction against appellants is based on evidence which demonstrates that appellants have misappropriated plaintiff's proprietary information in a manner that constitutes unfair competition with plaintiff's business. This court found persuasive the evidence offered by plaintiff to support its claim. As former employees of ATS, appellants were privy to confidential information which pertained to, inter alia, ATS's customer development strategies, its pricing methods, and its customer needs and requirements. They also gained access to ATS's test equipment now owned by plaintiff. As such, appellants have improperly used this information to interfere with plaintiff's customer contracts. For example, Mr. Morwald scheduled himself for five jobs with clients of ATS on the day that he resigned from the company. Mr. Morwald proceeded to perform work for one of these jobs—removal of autoclave sterilizers at Bristol-Myers-Squibb's Pennington, New Jersey office—notwithstanding that he was no longer employed by ATS.[2] Moreover, Mr. Uricchio is knowledgeable about ATS's system and software such that he may interfere with plaintiff's current and prospective customer relationships because he has retained possession of some of the plaintiff's validation books and SOP manuals.[3] Such actions constitute evi-

---

1. Rather, appellants argue that plaintiff has benefited from the departure of Mr. Uricchio from plaintiff's employ. Appellants argue that plaintiff reduced its asset purchase price at closing by $450,000 as a direct consequence of Mr. Uricchio's departure from the company.

2. See plaintiff's complaint, paragraphs 51-53.

3. See id., paragraphs 42-43.

dence sufficient to show that appellants are unfairly competing with plaintiff's business.[4] These actions constitute an interference with plaintiff's customer contracts because appellants are no longer employed by ATS, the company which secured these clients. The plaintiff has in no way benefited from the appellant's departure from ATS's employ. Rather, these actions constitute the type of harm that is necessary for this court to issue a preliminary injunction.

Appellants also argue that the monetary amount of the preliminary injunction-security bond set by this court by its order of September 14, 1998 is not supported by the evidence. Appellants contend that this monetary amount is inadequate, in light of the damages which appellants will sustain from this court's August 24, 1998 order, which enjoined appellants from proceeding forward on over 80 contracts. These arguments are without merit.

"The question of the proper amount of a bond for a preliminary injunction is within the discretion of the hearing court." *Broad & Locust Associates v. Locust-Broad Realty Co.,* 318 Pa. Super. 38, 44, 464 A.2d 506, 509 (1983). The purpose of the bond requirement is "merely to insure a ready source for payment of damages if due." *Juniata Foods Inc. v. Mifflin County Development Authority,* 87 Pa. Commw. 127, 131, 486 A.2d 1035, 1037 (1985). Notwithstanding this purpose, however, the bond

---

4. These actions also violate the agreement for sale and purchase of assets entered into between the parties on April 22, 1998. Section 14.01 of the agreement contains a noncompetition clause which states that ATS shall refrain from carrying on any business similar to the services provided by the plaintiff for a period of five years from the closing date. Here, appellants violate this clause because they are taking away plaintiff's business through their misappropriation of plaintiff's property.

requirement is not set to cover all damages but only those that are reasonably foreseeable. *Christo v. Tuscany Inc.,* 368 Pa. Super. 9, 20, 533 A.2d 461, 467 (1987); see also, *Greene County Citizens United by Cumpston v. Greene County Solid Waste Authority,* 161 Pa. Commw. 330, 337, 636 A.2d 1278, 1281 (1994). The lower court must determine the amount of the bond after balancing the equities involved on a case by case basis. *Id.* As the *Christo* court further explained:

"For instance, [plaintiff] may be unable to provide sufficient security where damages could be great, or where plaintiff is impecunious, yet the court may determine, based upon the balance of the equities, that the injunction should nevertheless issue. Consequently, a relatively low bond in light of possible damages may be set." *Christo,* 368 Pa. Super. at 20-21, 533 A.2d at 467.

Thus, the bond amount set here by this court is proper if it approximates the amount of damages that are reasonably foreseeable in this matter.

The bond amount of $7,500 set by this court is adequate and supported by the evidence. This court was acting entirely within its discretion in fixing the bond at $7,500. This court had a duty to act quickly in ruling on the plaintiff's motion for a preliminary injunction to prevent immediate and irreparable injury to plaintiff's business. See *Christo,* 368 Pa. Super. 21, 533 A.2d at 467. Thus, this court's primary focus was on whether to grant the relief requested, not on what potential damages might be sustained by appellants if the injunction is later determined to be erroneously issued. *Id.* Further, this court does not find convincing appellants' argument that the bond amount is inadequate, in light of their failure to provide this court with any affidavits which document the precise nature of the damages they allege they will

sustain as a result of this preliminary injunction. $7,500 was the maximum amount that this court could set without placing an onerous burden on the plaintiff; an amount set above $10,000 would have been too extensive. Thus, the bond amount of $7,500 set by this court is proper because it is supported by the evidence and is a reasonable approximation of foreseeable damages.

Appellant also contends that the nature of the hearing and the lack of notice as to its purpose point to reasons why this court's August 24, 1998 order should be reversed. They argue that they were informed that a conference was scheduled only to assess the status of the case and to determine the possibility of settlement. Appellants argue that they were not informed that the hearing was scheduled to rule on plaintiff's motion. Further, appellants argue that the hearing was actually not a hearing, but only a conference of counsel with this court because no testimony was taken and no affidavits were submitted. These arguments are not persuasive.

The purpose of an evidentiary hearing held pursuant to a party's injunction request is to develop "a factual basis for the requested relief." *Boyd v. Cooper,* 269 Pa. Super. 594, 597, 410 A.2d 860, 862 (1979). Both parties must be "given the *opportunity* to fully cross-examine witnesses and to present relevant testimony." *Ogontz Controls Co. v. Pirkle,* 329 Pa. Super. 8, 13, 477 A.2d 876, 879 (1984). (emphasis supplied) Here, this court stresses that appellants never made any request to offer evidence or to present testimony prior to this court's decision regarding plaintiff's motion for a preliminary injunction, notwithstanding that this court's hearing presented appellants with such an opportunity. Moreover, appellants may not now complain that an in camera proceeding does not suffice for purposes of presenting evi-

dence and testimony because their counsel could have requested a continuance to have this matter heard in the courtroom. Appellants also may not argue that they were not prepared for the hearing because they were without notice since this court made it clear to the parties that a hearing was scheduled for August 24, 1998.[5] Also, appellants have long known that an injunction hearing would occur soon since the plaintiff filed a motion for a preliminary injunction on June 17, 1998. Thus, this court does not understand how appellants can argue that they were not aware that a preliminary injunction hearing was to be held on August 19, 1998, in light of the instances in which appellants were afforded notice prior to that time. Further, appellants are foreclosed from questioning the informal nature of this court's hearing only after they have been prejudiced by the injunction order because appellants' counsel agreed to and failed to express dissatisfaction on August 19, 1998 with the nature of the proceedings which transpired at that time. In sum, the hearing in chambers was sufficient for both parties because it provided a factual basis for this court's issuance of a preliminary injunction.

Finally, appellants raise a couple of specific arguments which have not yet been addressed by this court in this opinion. Appellants argue that plaintiff could not be entitled to an injunction to protect trade secrets because plaintiff allegedly admitted in its deposition that it owned nothing secret. Appellants also argue that this court's August 24, 1998 order is punitive. First, they argue that the order is overbroad in requiring appellants to escrow 100 percent of the proceeds of contracts obtained by ap-

---

5. See order, dated August 6, 1998, from court administrator John Dunmire.

pellants subsequent to the date of Mr. Uricchio's resignation. Second, they contend that the order is based on an alleged preconceived opinion held by this court concerning appellants' business ethics that is inconsistent with appellants' legal right to compete with the plaintiff. These arguments also must fail.

Appellants' argument that plaintiff contravened its cause of action through admissions that it owned nothing secret is pure bunk. This argument is totally inconsistent with the thrust of plaintiff's claim and the evidence offered in support of this cause of action.[6] Appellants fail to cite in its concise statement which page of the plaintiff's deposition contains this admission. Moreover, this court did not locate any such statement after it reviewed the court files regarding this matter. Thus, this court will not further address this argument because a review of the case file reveals that it has no basis.

Lastly, this court's order of August 24, 1998 is not a punitive measure designed to penalize appellants, but rather a necessary step taken to preserve the legal rights of the parties until a resolution of this case is reached. Plaintiff has presented to this court credible evidence that appellants have interfered with plaintiff's relationship with its customers. Such interference constitutes the type of immediate and irreparable injury contemplated by Rule 1531. See *Chmura,* 398 Pa. Super. at 537, 581 A.2d at 594. Consequently, it is within this court's discretion to order appellants to escrow 100 percent of the proceeds from the contracts in question because plaintiff has demonstrated that appellants' interference with these contracts through its acquisition of plaintiff's trade secrets and test equipment constitutes unfair competition. This

---

6. See generally, verified complaint, dated June 17, 1998.

court escrowed the full amount of the proceeds in order to preserve these fees when appellants had begun performance on the contracts in question here. Thus, the 100 percent escrow requirement is the natural and probable consequence of appellants' interference with plaintiff's contracts and customers. Appellants' connection to these contracts arises only from their breach of the fiduciary duty that it owed to plaintiff. Therefore, this court's order of August 24, 1998 was not based on the alleged comments made by this court in chambers criticizing appellants' business ethics. Rather, the issuance of the preliminary injunction was based on the real harm suffered by plaintiff.

## CONCLUSION

For the foregoing reasons, the Superior Court should affirm this court's orders, dated August 24, 1998 and September 14, 1998.