## Anchel v. Shea

C.P. of Pike County, no. 1005-1999-Civil.

*John J. Schneider,* and *Rolin P. Bissell,* for Anchel.
*John H. Klemeyer,* and *Steven L. Friedman,* for Shea and Altec Lansing Inc.

THOMSON, *P.J.,* December 13, 1999—This opinion is entered to address the petitions for preliminary injunction filed by both parties in the above-captioned matters. A hearing was held on November 22, 1999. The court is acting pursuant to its authority as a court of equity or chancery as related to the supervision and control of corporations. 15 Pa.C.S. §104 and 15 Pa.C.S. §1793.

## BACKGROUND

These findings and conclusions are preliminary in nature, are based upon the record before the court, and are mainly limited to the facts necessary for the determination of the present injunctive requests. As a matter of comment, the court is surprised that the corporate documents rely upon the "significant transactions" provisions

(located in three locations) for issues related to the executive employment of a controlling shareholder, who would seemingly have wanted to more explicitly protect his position; further, it is astounding that resolutions of import would not be recorded in the form of minutes, and that notice provisions for the holding of meetings where the control of the company is at issue would not be scrupulously followed. These facts, showing a certain disregard to the formalisms of corporate activity, belie a weakness on the part of the request for equitable action. When the issue of irreparable harm to the corporation is raised, the harm really befalls the shareholders . . . the vast majority of whom are responsible for the very problems of loose drafting, poor record keeping, and devious tactics which have presented this situation. Were it not for uninvolved shareholders and innocent employees, the court may have seen fit to allow the litigation to go forth without injunctive action while the participants continue to foul their own nests.

All of the arguments presented aside, the court finds the whole idea that a person with the control of a majority of shares cannot maintain a simple board majority which will continue to support him to be quite suspect (except in the case of a for cause removal, which this is not). The only way this would seem possible, would be through a certain amount of either treachery by directors or inattention by the executive which prevents the executive from knowing the true activities and intentions of the board and its members. In other words, even if only a simple majority is required to remove the CEO who controls a share majority, with enough notice, he should be able to elect a majority of directors whose judgment would allow for his retention.

Truly an odd case it is where there is essentially a claim by a *majority* shareholder of oppression committed by a *minority* shareholder. Such is a case where the victim may deserve his fate. Anchel may bargain away the contractual safeguards he has in the ownership and control of the company, and on several occasions it would appear that he has—first with the introduction of outside investors in 1994, and later with the renewal and modification of the employment contract. Further, the retaining of Tommyca Freadman as designee where the other party has required his placement on the board seems like a foolish dilution of one's own position. A little forethought and attention to the contents of the corporate documents should prevent such a case from coming before the court. Inattention can, and maybe should, be taken advantage of. But failure to follow proper notice procedures, which in itself causes another's inattention, is unfair, and intolerable under the law. Both sides have tried to act in this manner.

The factual circumstances which are at issue involve: the existence and interpretation of certain provisions found in the documents relating to the relationship of the parties (articles of incorporation, bylaws, shareholders agreement, voting trust, employment agreements and collateral writings); and the corporate actions which occurred on the several occasions. Those occasions are: (1) the board meeting of April 27, 1999, where Anchel's employment contract was renegotiated and extended; (2) the October 26, 1999 meeting, where the purported removal of Anchel as CEO, and the rescission of the voting trust occurred; (3) and the meetings of November 12, 15 and 19 where there were various attempts to re-

constitute the board and undo the actions of the October meeting.

The injunctive orders/decrees herein are made to preserve the status quo of the corporation during the pendency of the action. The "status quo" in this circumstance is a changeable thing, as the corporation must continue to function, and the shareholders must be able to expect the corporation to act in their best interest. The court cannot see the benefit of having the company and its shareholders left without the ability to act and would therefor provide injunctive measures to maintain status which would have existed *had the powers of the corporation, its shareholders and its directors been exercised appropriately.* The court is constrained, however, to maintain the status quo as it existed immediately prior to the wrongful conduct. See *e.g., Lewis v. City of Harrisburg,* 158 Pa. Commw. 318, 631 A.2d 807 (1993) and *Maritrans GP Inc. v. Pepper, Hamilton & Scheetz,* 529 Pa. 241, 602 A.2d 1277 (1992).

The court has done what it can to avoid giving any advantage to either side merely on the basis of timing. The parties have showed their hands, and there is no way to put the parties back into the tactical positions that existed in the days leading up to the October 26, 1999 meeting. The advantages of the differing notice requirements for calling meetings of the board and the shareholders have already been gained or lost. The court is now faced with the prospect of determining what valid actions have happened, and maintaining the integrity of the corporation through the current controversy as though it had been properly represented by its directors and shareholders.

The issue of bond was not addressed other than the general claims by both parties that the corporation will be harmed if the other is in control. The court must set bond in an amount that will approximate the "reasonably foreseeable" damages which could be wrought by the injunction. See Pa.R.C.P. 1531(b), and see *Christo v. Tuscany Inc.,* 368 Pa. Super. 9, 533 A.2d 461 (1987) and *Greene County Citizens United v. Greene County Solid Waste Authority,* 161 Pa. Commw. 330, 636 A.2d 1278 (1994). Determining the difference in value of the business judgment of the parties is speculative at best. Both parties in their respective petitions have, of course, suggested a nominal bond. Neither has contested the other's bond recommendation. The issuance of the injunction is for the purpose of maintaining the value of the corporation as a whole, and represents, in part, granting the petitions of both sides, and a protection of both their interests in the value of the corporation. The parties have in fact agreed that it is in the benefit of all parties that the management of the corporation be clarified during the pendency of the action. Wherefore, only nominal bond shall be required.

Lastly, following a lengthy hearing, and considering the many pleadings and briefs filed, the court finds: that irreparable harm will befall the corporation without the issuance of an injunction; that there is no adequate remedy at law; that greater injury will occur if the injunction does not issue; and that public policy should not allow the control and management of the corporation to remain fractured. Wherefore, the court issues the orders that follow.

## PRELIMINARY FINDINGS AND CONCLUSIONS

### A. *Removal of Edward Anchel as President and CEO of Altec Lansing*

(1) At the April 27, 1999 meeting of the board of directors, Edward Anchel's contract as president and CEO was renewed for a period of three years, with an increase in base salary, and with a provision that Anchel may be removed as CEO by a majority vote of the board of directors.

(2) As evidenced by the current factual dispute as to a change in voting requirements, the removal of Anchel as CEO shall be considered a "significant transaction."

(3) "Significant transactions" require five days prior notice which describes the proposed transaction. P-3 stockholders agreement, article II., section 2.05(b)-(b)(i); P-9 articles of incorporation, article V.(2)(c)(i); P-8 by-laws, article III., section (4)(b) ("notice for meetings at which a significant transaction may be considered shall be provided at least five business days prior to any such meeting . . .").

(4) The proposed removal of Anchel was not noticed five days prior to either the special meeting, or the regular meeting.

(5) The removal of Edward Anchel as CEO which was purportedly carried out at the October 26, 1999 meeting of the board of directors was without effect.

(6) The status immediately prior to the challenged conduct found Edward Anchel as president and CEO.

Wherefore, for the purposes of this preliminary injunction, and as of the present date, it is hereby ordered and decreed that Edward Anchel shall be reinstated as presi-

dent and CEO effective retroactively to October 26, 1999 immediately prior to the purported removal.

B. *The Election and Designation of Directors and the Actions of the Newly Constituted Board During the Meetings of November 12, 15 and 19*

(1) The shareholder meeting held November 12, 1999 was properly noticed for the purpose of removing Tommyca Freadman as director, and placing David Anchel as Edward Anchel's designee, and was adjourned for lack of quorum.

(2) The shareholder meeting held November 15, 1999 which represented a reconvening of the meeting of November 12, was properly noticed; however, it was not properly convened, as a shareholder who was present at the premises, Shea, was excluded from the meeting.

(3) The board of directors meeting held on November 15, 1999 was not properly noticed, as no notice was provided to Tommyca Freadman.

(4) The shareholder meeting held November 19, 1999 was properly noticed, and was properly convened with a quorum present. The parties were unable to proceed due to their disagreements. Anchel believed that the actions of removing Freadman and electing David Anchel had been previously accomplished, but nonetheless was seeking ratification. Shea believed that Freadman could not be removed, believed that he held a majority of the shares, and refused to act toward accommodating, acknowledging, or ratifying any of the proposals.

(5) The status immediately preceding the challenged conduct found the board comprised as it was on November 11, 1999, with the actions of the board on November 15, 1999 having not occurred.

Wherefore, for the purposes of this preliminary injunction, it is hereby ordered and decreed that the actions taken at the shareholders and the directors meetings of November 15, 1999 shall be considered as null and void, and the board shall be comprised as it was on November 11, 1999.

Furthermore, the meeting of November 19 shall be immediately stayed pending further order of the court.

## C. *The Removal of Tommyca Freadman as Director, and the Dissolution of the Voting Trust*

(1) Because Edward Anchel remains CEO, Tommyca Freadman's either voting to rescind the voting trust agreement, or giving of his proxy to another party, are in contravention of his agreement with Edward Anchel. See D-13, supplemental letter agreement with Tommyca Freadman, May 17, 1994, paragraph 2.

(2) Edward Anchel cannot entirely remove Tommyca Freadman as a director in contravention of the agreements with Tommyca Freadman, Altec Lansing and Soundco, provided that Freadman is still employed with Altec Lansing. See D-12, supplemental letter agreement with Tommyca Freadman, May 17, 1994, paragraph 4; and D-14 supplemental letter agreement with Tommyca Freadman, May 12, 1994, paragraph 2.

(3) Both Freadman and Soundco must support Anchel's designees to the board of directors. See D-14 supplemental letter agreement with Tommyca Freadman, May 12, 1994, paragraph 2; and P-3 stockholders agreement, article II., section 2.01(a), (e) and article V., section 5.05.

(4) Soundco must support the removal of Anchel's designees from the board of directors. Stockholders agreement, article II., section 2.02.

(5) The status immediately preceding the challenged conduct found the board comprised as it was on November 11, 1999, with the board, on the basis of notice requirements for significant transactions, unable to proceed with the removal of Edward Anchel until after the reconstitution of the board on November 19.

Wherefore, for the purposes of this preliminary injunction, it is hereby ordered and decreed that the actions taken at the shareholders and the directors meetings of November 15, 1999, shall be considered as null and void, and the board shall be comprised as it was on November 11, 1999.

Furthermore, it is ordered and decreed that the board is precluded from considering the removal of Edward Anchel as president and CEO, and that all action of the board shall be valid only if approved by at least a five-sevenths vote of the entire board until further order of the court.

In the meantime, the court further orders that until final resolution of this action, all meetings of the directors and shareholders must be noticed in a verifiable format (such as certified mail, by signed acknowledgment or by process server), that the minutes and resolutions of those meetings be transcribed in full by a licensed stenographer and acknowledged by signed verification of the secretary, and that all resolutions be verified by the signatures of those voting on the issue.

These orders shall be effective immediately, and shall remain in effect until further order of the court.

Each party shall post a bond in the amount of $1,000 with the prothonotary.